719 So.2d 131 (1998)
SCARIANO BROTHERS, INC.
v.
Carl L. SULLIVAN, Jr.
No. 98-CA-1514.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1998.
*132 Pauline F. Hardin, Laurie M. Chess, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Plaintiff-Appellee.
Jeffrey A. Schwartz, Audrey N. Browne, Schwartz & Browne, L.L.C., New Orleans, and Gregory S. Lacour, G. Scott Vezina, Vezina and Gattuso, Gretna, for Defendant-Appellant.
Before KLEES, LOBRANO and MURRAY, JJ.
LOBRANO, Judge.
We are called upon to decide if an agreement not to compete complies with Louisiana's non-competition statute, La. R.S. 23:921 and if so, whether the facts of this case warrant the issuance of a preliminary injunction. The trial judge agreed with Scariano Brothers, Inc., appellee, and enjoined its former employee, Carl L. Sullivan, Jr., appellant, from working for a competitor for a period of two years..

FACTS AND PROCEDURAL HISTORY:
The basic chronology precipitating this lawsuit is not seriously disputed. Prior to April 28, 1998, Carl L. Sullivan, Jr. was employed by Scariano Brothers for approximately seven years as a sales representative. Scariano is engaged in the marketing, distributing and processing of meat, poultry and meat related products in numerous parishes and counties in Louisiana, Mississippi and Alabama. In December, 1995 Scariano and Sullivan entered into an employment agreement which contained a non-competition clause. On November 19, 1997 another employment agreement was entered into which *133 contained a non-competition clause identical to the 1995 agreement. The evidence shows that the 1997 agreement came about because of Scariano's desire to keep Sullivan in its employ and prevent him from leaving to work for F. Christiana & Co., a Scariano competitor. The evidence shows that while Scariano's and Christiana's customer bases are not identical, there is significant overlap; representatives from the two companies consider themselves competitors. The evidence is uncontroverted that, previously Sullivan had considered leaving Scariano to work for Christiana. As an incentive to stay, Sullivan was promoted to sales manager, received a $10,000.00 signing bonus and an increase in pay. Despite these incentives, on April 28, 1998, Sullivan resigned from Scariano and went to work for Christiana.
Scariano filed the instant lawsuit seeking to enforce the non-competition clause of the employment agreement by enjoining Sullivan. The matter was tried on Scariano's request for a preliminary injunction and in accordance with Code of Civil Procedure article 3609.[1] The trial court concluded that Scariano had met the requisite prima facie showing of its entitlement to a preliminary injunction and enjoined Carl L. Sullivan from:
(i) buying, selling, distributing, marketing, processing, and packaging beef, pork, poultry, meat and meat related products as a business in Scariano's business area as defined by the list of parishes and counties indicated in Exhibit B attached to [the] judgment for a period of two years from 28 April 1998;
(ii) soliciting any customers of Scariano, carrying on, or engaging or taking part in Scariano's business as stated in subparagraph (i) above or in a business similar thereto within Scariano's business area for a period of 2 years from 28 April 1998;
(iii) except as a passive investment, rendering services to or owning, sharing in the earnings of, or investing in the stock, bonds or other securities of any other person or entity directly or indirectly engaged in Scariano's business or in a business similar to Scariano's within Scariano's business area; and,
(iv) divulging Scariano's customer lists, information related to customers, trade secrets, confidential information, supplier lists, and information related to supplies, purchasing, pricing, and marketing strategies, and delivery schedules and routes for a period of two years from 28 April 1988.
Sullivan perfects the instant appeal arguing that the non-competition clause does not comply with R.S. 23:921 for several reasons, each of which we address, and that the preliminary injunction should be dissolved. For the following reasons, we amend and affirm.

DISCUSSION:
Undeniably, Louisiana's public policy disfavors non-compete agreements. "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, ... shall be null and void." La. R.S. 23:921(A). However, that statutory prohibition is subject to the exception granted in Section (C), which provides, in pertinent part:
Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Prior to its revision in 1989, the non-competition prohibition was embodied in Act 104 of 1962 which provided that "[n]o employer shall require or direct any employee" to enter into an agreement not to compete. [emphasis added]. That former language suggests a legislative concern of preventing employers from forcing non-compete agreements as a condition of employment. However, the current statute is *134 couched in permissive terms suggesting, at least, a recognition of the competitive realties of the business world.
Regardless of whether the 1989 revision of R.S. 23:921 signifies a change in public policy with respect to non-competition agreements, the courts of this state have been consistent in strictly construing such agreements in the employee's favor. Water Processing Technologies, Inc. v. Ridgeway, 618 So.2d 533 (La.App. 4 Cir.1993), and the cases cited therein. That rule of strict construction permeates Sullivan's various arguments, each of which we now address.
Sullivan first argues that the covenant not to compete is overly broad because it, in effect, restrains him from working in any capacity for a competitor. He relies on subparagraph iii of the injunction which contains the phrase "rendering services" to a competitor. This, he says, basically prevents him from doing any type of work for Christiana and contradicts the clear legislative intent underlying R.S. 23:921. That intent, Sullivan argues, is expressed in the rationale of our brethren of the Second Circuit in Summit Institute for Pulmonary Medicine and Rehabilitation, Inc. v. Prouty, 29,829 (La.App. 2 Cir. 4/9/97), 691 So.2d 1384, writ denied, 97-1320 (La.9/26/97), 701 So.2d 983. He urges we follow that decision.
In Summit, the court interpreted the two restraints of Section C [of R.S. 23:921] as allowing the "employer to prevent a former employee from engaging in a similar business for himself, i.e. an entire business venture, or from being employed in a competitor's business in a position wherein he solicits the customers of his former employer." At 1387. The issue in Summit was whether the language of the non-competition agreement complied with the statutory requisites. After interpreting Section C in the above manner, the court concluded that the language of the agreement tried to accomplish what the court's interpretation of the statute said it could not and thus it did not conform to the statute.
We disagree with the narrow interpretation of the Summit decision. It just seems illogical and nonsensical to say that the statutory language only prohibits an employee from conducting his/her own business in competition with a former employer. That interpretation ignores the economic reality that employees move around in the market place and more often than not seek employment with a competitor doing the same job as with the former employer. And, more important, if the legislature had intended such a strict meaning, it could have easily said "engaging or carrying on his own business." (emphasis added).
More important, however, is the fact that the case before us poses a different inquiry from that presented in the Summit case. Here, our inquiry is whether the additional "rendering services to" language is overly broad, does not conform to the statute and thus renders the entire clause unenforceable. Scariano argues it does not because the phrase "rendering services" is synonymous with the "carrying on" or "engaging in" language of Section C, and that the trial court concluded as such.
The covenant not to compete in the instant case provides in paragraph 12.2:
Employee and the Company further expressly acknowledge that the Company Business Area includes the parishes and counties named above. Employee will not, during the term of this Agreement and for a period of two years from the date of the termination of his employment, whether as owner, principal, agent, partner, officer, employee, independent contractor, consultant, stockholder, licensor or otherwise, alone or in association with any other person, directly or indirectly (i) solicit any customers of the Company within the Company Business Area, (ii) carry on, be engaged or take part in the Company's Business or in a business similar thereto within the Company's Business Area, or (iii) render services to or own, share in the earnings of, or invest in the stock, bonds or other securities of any other person or entity directly or indirectly engaged in the Company's Business or in a business similar thereto within the Company Business Area; provided, however, that Employee may own passive investments in the securities of any similar business (but without *135 otherwise participating in such similar business) if such securities are listed on any national or regional securities exchange or are registered under Section 12(g) of the Securities Exchange Act of 1934, as amended.
With the exception of the "rendering services to" provision of subparagraph iii, the remainder of paragraph 12.2 conforms to the statute. In fact, subparagraphs (i) and (ii) basically follow the statutory language which prohibits solicitation and/or carrying on or engaging in a similar business.
Initially, we disagree with Scariano's "synonymous" argument. If the phrase is synonymous, then why is it necessary and why include it in the contract. We find that "rendering services" falls outside of the purview of the statute, can be interpreted to include activities not contemplated by the statute and should not have been included in the judgment. However, neither that finding nor Sullivan's other arguments render the entire agreement unenforceable.
We decline to follow Summit. We hold that "carrying on or engaging in a business similar to that of the employer" can be prohibited by agreement regardless of whether it is the employee's own business or whether the employee works for another. However, because the additional language of "rendering services" can be interpreted as an attempt to prevent Sullivan from working in a capacity with Christiana that does not constitute "carrying on or engaging in a business similar" to that of Scariano, subsection iii of paragraph 12.2 is unenforceable. Nonetheless, because of the severability clause (paragraph 18) in the contract it is not necessary to void the entire agreement. We sever that provision. The judgment will be amended accordingly. See, AMCOM of Louisiana, Inc. v. Battson, 28,171 (La.App. 2 Cir. 1/5/96), 666 So.2d 1227, reversed 96-0319 (La.3/29/96), 670 So.2d 1223; Henderson Implement Co., Inc. v. Langley, 97-1197 (La. App. 3 Cir. 2/4/98), 707 So.2d 482.
Next, Sullivan argues that Scariano failed to properly define its business in the agreement and therefore the injunction fails to particularize the acts to be enjoined. Sullivan relies on the rule of law that covenants not to compete must specifically define an employer's business in order to be enforceable. Scariano counters with the argument that R.S. 23:921 does not require that a non-competition agreement define the employer's business and that Sullivan clearly knew Scariano's business having worked there for seven years.
While Scariano is correct in that there is no statutory requirement to define the employer's business, the law does require that an injunction "shall describe in reasonable detail ... the act or acts sought to be restrained." La. C.C.Pro. art. 3605. In this case the injunction follows the language of paragraphs 12.1 and 12.2 of the agreement as well as the evidence which defines Scariano's business. Paragraph 12.1 provides:
Employee and the Company acknowledge and agree that the Company is engaged in the business of selling, distribution, marketing, processing and packaging of poultry, meat and, meat related products (the "Company's Business") in the following parishes in Louisiana and counties in Mississippi and Alabama (the "Company Business Area"). See Exhibit B.
Thus, when paragraph 12.2 is read in conjunction with paragraph 12.1, the reasonable and logical conclusion is that Sullivan agreed not to carry on or engage in the business of selling, distributing, marketing, processing and packaging of poultry, meat and meat related products. While Sullivan argues that "buying" is beyond the scope of the agreement's definition, we find that "marketing" would certainly include that term. We hold that the agreement sufficiently describes the prohibited activities, and that the injunction satisfies the mandate of Code of Civil Procedure article 3605.
Sullivan argues that the exclusion of boxed beef, pork, catfish nuggets and fillets, crawfish and trout makes the agreement's business definition deficient and thus voids the injunction. We disagree. Simply, each of the items not specifically mentioned falls into the broader category of meat and/or meat related products. More important, Sullivan's seven year employment in a managerial capacity with Scariano certainly supports his knowledge of Scariano's business. The intent of the agreement is to prevent Sullivan *136 from competing in the same business as Scariano. It is undisputed that Sullivan knows what that business entails. To accept Sullivan's argument would ignore the intent of the parties and place an unnecessary burden in the confection of a non-competition clause.[2] See, Henderson Implement Co., Inc. v. Langley, supra.
Next Sullivan argues that the "no solicitation" clause fails to adequately define prohibited customer solicitations. Sullivan says that because the agreement does not permit him to solicit customers for items Scariano does not sell, the entire clause is unenforceable. We disagree.
The trial court addressed and resolved this argument by concluding that "the issue of customer solicitations is sufficiently covered for the contract obviously refers to Scariano's business as defined in paragraph 12.1 of the contract." We agree with that reasoning. Sullivan's argument requires an unreasonable interpretation of the agreement. The logical and reasonable meaning is that Sullivan is prohibited from soliciting Scariano's customers for the purpose of conducting the same or similar business as Scariano. Obviously, Sullivan could contact Scariano's customers if he were trying to sell life insurance or a vacuum cleaner.
We find no merit in this argument.
Finally, Sullivan complains that the agreement contains an unlawful wage forfeiture provision which invalidates the entire non-compete clause. The trial judge dismissed this argument by severing that provision pursuant to the agreement's severability clause. We agree with that result.
Paragraph 13(a) provides for a salary forfeiture as a remedy for breach of the agreement. A forfeiture of accrued salary or wages is prohibited by R.S. 23:634. However, Scariano did not seek that remedy and thus argues it was within the court's discretion to sever it from the contract.
In Henderson Implement Co., Inc. v. Langley, supra, even in the absence of a severability clause in the contract, the court recognized that "it is not necessary that an entire agreement containing a provision against public policy be declared null and void." at p. 5, 707 So.2d at 485. As we previously discussed, the agreement in this case does provide for severability which we agree is appropriate with respect to the forfeiture provision.
Accordingly, for the reasons assigned, we amend the judgment against Sullivan to delete subsection (A)(iii) of the injunction. In all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
MURRAY, J., concurs with reasons.
MURRAY, Judge, concurring with reasons.
I find the rationale of Summit Institute v. Prouty, 29,829 (La.App.2d Cir.4/9/97), 691 So.2d 1384, writ denied, 97-1320 (La.9/26/97), 701 So.2d 983, persuasive. Mr. Sullivan's position with Scariano, however, appears to involve solicitation of Scariano's customers, which is subject to the exception of sec. C of La. R.S. 23:921(A), even under the more narrow interpretation of Summit. I, therefore, agree with the majority that the record supports the preliminary injunction issued herein, as amended.
NOTES
[1] The matter was submitted on affidavits and depositions. While there was objection by Sullivan to the use of depositions, that issue has not been raised in this appeal.
[2] For example, the injunction utilizes the word "pork" which is not mentioned in the agreement. However, certainly pork is a meat product. It would be unreasonable to require that each and every type of meat product be mentioned in the agreement.