741 So.2d 91 (1999)
MORENO AND ASSOCIATES, Plaintiff-Appellant,
v.
James Gerald BLACK, et al., Defendants-Appellees.
No. 99-46.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1999.
Writ Denied June 16, 1999.
*92 C. Luke Edwards, for Moreno and Associates.
Gregory Bryan Dean, Opelousas, for James Gerald Black, et al.
BEFORE YELVERTON, THIBODEAUX, and SULLIVAN, Judges.
YELVERTON, J.
Moreno and Associates (Moreno) sought a preliminary injunction to prohibit a former employee, James G. Black (Black) from competing with Moreno in violation of a non-competition agreement signed by the parties. After a hearing on a rule to show cause, the trial judge refused to grant the injunction and nullified the agreement finding its provisions overbroad and against public policy. Moreno appealed. We reverse and remand.
In August 1996 Moreno hired Black as a safety consultant. He remained with Moreno for almost two years. During this time, Black signed a document entitled "Employee Confidentiality and Non-Competition Agreement."
In May 1998 Black was sent to make a call in Iberia Parish on a business named UNIFAB. He was to offer Moreno's services to UNIFAB on a job being cooperatively worked by Shell Oil Company and UNIFAB. Shell was an existing client of Moreno. Moreno hoped to gain UNIFAB as a client. Upon arriving at UNIFAB's premises, Black was told to leave the property, obviously without a contract for Moreno.
Black resigned from Moreno on June 2, 1998. On June 16, 1998, he began working as an independent contractor with UNIFAB as a safety consultant. Black also founded his own safety consulting company, J. Gerald Black & Associates, Incorporated, some weeks after resigning from Moreno.
Moreno sued Black for a preliminary injunction and damages based on the noncompete agreement. Moreno alleged that not only did Black violate the agreement by gaining employment with UNIFAB to provide safety consulting services, but also that he solicited the help of at least two of Moreno's employees in violation of the agreement.
The trial judge found that Black had in fact violated the agreement but that the agreement was null and void as against public policy, and therefore unenforceable. The court denied a preliminary injunction and dismissed the suit.
Louisiana Revised Statute 23:921 provides in pertinent part:
A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
. . . .
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
*93 Noncompete agreements have historically been frowned upon in Louisiana. Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (La.App. 2 Cir.), writ denied, 604 So.2d 1002 (La.1992). Although the statute specifically states that these agreements are against public policy, it does provide for narrow exceptions as recited in Subsection (C) above. The permissive language of the statute recognizes the competitive realities of today's business world. Scariano Bros., Inc. v. Sullivan, 98-1514 (La.App. 4 Cir. 9/16/98); 719 So.2d 131, writ denied, (La.11/6/98); 727 So.2d 452. Therefore, if the contract fits within the exceptions provided by our legislature, it is an enforceable contract. We find that Moreno's contract fits the exceptions.
The agreement at issue was a covenant not to compete with the business conducted by the employer within 24 specified parishes in Louisiana, two specified counties in Texas, and "all" oil and gas drilling or production platforms, rigs, or related entities located in the Gulf of Mexico outside the boundaries of Louisiana and Texas. Moreno's business, according to the contract, consisted of the design and implementation of employee safety management systems for all businesses, including oil and gas, petro-chemical, manufacturing, and insurance industries. The agreement's provisions prohibited an employee from directly or indirectly competing with Moreno's business for a period of two years following termination of employment.
The appeal raises three issues:
(1) Whether the trial court erred in finding the non-compete agreement null and void.
(2) Whether the trial court erred in finding Black did not solicit Moreno's employees in violation of the agreement.
(3) Whether the trial court erred in failing to grant the injunctive relief requested by Moreno.

1.
The trial court found that the noncompete agreement was null and void as against public policy because the court perceived that it was overbroad in two areas.
Initially, the trial judge noted that the geographical restrictions in the contract fell far short of the specificity required for such agreements. He found as a fact that Moreno's business was limited to the parishes of Lafayette and Iberia. The contract prohibited competition far beyond these parishes. Finding the contract overbroad in this and one other respect, the trial court found that the contract was not subject to reformation. We agree that the geographical provisions contain some unenforceable features, but the objectionable references can be severed leaving the balance of the contract enforceable.
The agreement contains a severability clause. Moreno concedes in brief that its business is confined to Lafayette and Iberia parishes. The competition complained of occurred in Iberia Parish; therefore, the deletion of all geographical references except the specified parishes of Lafayette and Iberia renders the agreement enforceable. AMCOM of Louisiana, Inc. v. Battson, 28,171 (La.App. 2 Cir. 1/5/96); 666 So.2d 1227, rev., 96-0319 (La.3/29/96); 670 So.2d 1223; (reinstating judgment of the trial court which reformed an overbroad contract); Dixie Parking Service, Inc. v. Hargrove, 96-1929 (La.App. 4 Cir. 3/26/97); 691 So.2d 1316.
The trial court also found that the language of the contractthat which regulates what Black can and cannot dowas overbroad. Specifically, the trial judge found the actions prohibited were overly broad. In its reasons for judgment, the trial court focused on the following language which states that the employee cannot, for a period of two years,
directly or indirectly own, manage, operate, control, be employed by, participate in (whether as a proprietor, partner, *94 stockholder, director, officer, Employee, agent, consultant, joint venturer, investor, or other participant), or be connected in any manner with the ownership, management, operation, or control of any Person or business in direct or indirect competition with the business conducted by EMPLOYER at time of such termination....
However, a close review of this language in light of recent jurisprudence convinces us that it is in conformity with the statute.
In Scariano Bros., Inc., 719 So.2d 131, the fourth circuit upheld a noncompete agreement containing a provision similar to that with which we are faced. That provision expressly prohibited the employee from engaging in or taking part in the company's business or in a business similar thereto whether "as owner, principal, agent, partner, officer, employee, independent contractor, consultant, stockholder, licensor or otherwise...." Id. at 134. The court struck down only one provision of the contract which attempted to prohibit the employee from "rendering services" to another competitor. The court noted that this language could be interpreted to prevent the employee from working in a capacity with a competitor which did not fall within the statute's "carrying on or engaging in a business similar" to that of the employer. The Scariano court simply severed the offending provision in deference to the contract's severability clause and upheld the remainder of the contract. With the exception of the phrase "rendering services to," the court found that the language of the provision conformed to the statute.
Earlier, the same court, in Dixie Parking Service, Inc., 691 So.2d 1316, reviewed another provision similar to the one before us. The employee in Dixie agreed
neither directly or indirectly to own, manage, operate, control, be employed by or participate in the ownership, management, operation or control of, or be connected in any way with any automobile parking and parking management business of the type and character engaged in and competitive with that conducted by Dixie.
Id. at 1318. The court upheld the agreement and enforced its provisions against the competing employee.
Further, in AMCOM, 670 So.2d 1223, the supreme court, in reinstating the trial court's judgment, enforced a noncompete agreement containing the following provision:
EMPLOYEE agrees and represents to AMCOM, ... that for a period of two (2) years following the termination of this Employment Agreement, ... EPLOYEE will not, as principal, employer-stockholder, co-partner, employee or in any other individual or representative capacity whatsoever, enter into or engage directly or indirectly in the performances of any services for any other radio station or competitor of AMCOM located in Shreveport or Bossier City, Louisiana....
666 So.2d at 1229.
Although the Dixie and AMCOM courts did not specifically address the language in the agreements regarding the actions being prohibited, the courts nevertheless upheld the agreements as valid thereby lending support to our view that the language before us is authorized and conforms to the statute.
The statute permits an employer to prohibit its employee "from carrying on or engaging in a business similar to that of the employer ..." La.R.S. 23:921(C). Moreno is in the business of safety consulting. Clearly, the company needs to restrict its employees from taking the invaluable information and skills learned from Moreno and then competing with Moreno in the same vicinity immediately thereafter. The language in Moreno's contract, which concerned the trial court, expressly addresses this need. The language, however, is not overly broadit restricts an employee's participation only with a "[p]erson or business in direct or *95 indirect competition" with Moreno. The language cannot act to limit Black from working in any capacity with a competitor; however, it can properly operate to prohibit those actions which directly or indirectly compete with Moreno's business. See Scariano, 719 So.2d 131.
Therefore, we find that Moreno's contract validly operates to prevent its employees from leaving Moreno's employ and competing in a business in direct or indirect competition with Moreno's business at the time the employee is terminated. The contract's language falls within permissible bounds of La.R.S. 23:921.

2.
Second, Moreno argues that the trial court also erred in failing to find that Black solicited Moreno's employees in violation of the agreement. There is no error in this factual finding.
Evidence was presented by both sides regarding Black's alleged solicitation of Moreno's employees. Moreno entered into evidence a copy of a faxed letter from a realty company addressed to Black regarding a lease on a suite. In that letter is a reference to a person named "Nell." Moreno's vice-president, Paul Perron, testified that he "confiscated" this letter on July 24, 1998, following Black's resignation. He believed that "Nell" referred to a Moreno employee but he was not certain. Black admitted that Nell, an employee of Moreno, looked for office space for him, but he stressed that this was on a voluntary basis.
Moreno also presented the testimony of Michael Guidry, a software developer for Moreno's databases. He testified that approximately two weeks prior to Black's resignation, Black offered him $1000 to develop a database for him. However, Guidry stated that when he asked Black if this was for a competitor, Black replied that it was not.
Black also testified that he spoke to Nell a couple of times following his resignation but that she was checking to see how he was doing. Further, Black testified that Nell approached him and asked if there was work she could do for him; however, Black stated that he did not request that Nell perform any work for him nor was she ever on his payroll. As to his contact with Guidry, Black said he wanted to work on a database after hours on his idea for a super database but had no intention of stealing secrets from Moreno. It was a project for his own information.
Thus, there was evidence presented by both sides to establish whether Black solicited the employees of Moreno to work for him. On the basis of the evidence presented, we find no clear error in the trial judge's finding of fact that Black did not solicit the employees of Moreno. The evidence fails to conclusively establish that Black solicited and received the help of Nell with regard to his resignation and new business with the exception that she voluntarily sought office space for him. Further, Michael Guidry could not confirm that Black sought his help to aid Black's future business ventures. In light of this evidence, the trial judge did not commit manifest error in finding that Black did not solicit Moreno's employees in violation of the contract.

3.
Finally, Moreno urges that the trial court erred in failing to grant Moreno injunctive relief. We agree.
The agreement at hand is a valid noncompete agreement. The trial judge specifically found that Black violated the terms of that agreement. He stated, "BLACK'S contract with Unifab evidences a direct or indirect competition in a prohibited geographical area and therefore... Black violated the non-competition agreement as written."
Black admitted that he signed a two-year contract with UNIFAB. Further, he admitted that after he left he was doing exactly what he was doing at Moreno but on a broader scale.
Black knew that Moreno desired UNFAB as a customer. It was Black who *96 was initially sent out to offer Moreno's services to UNIFAB. He knew Moreno wanted UNIFAB as a customer. However, two weeks after this contact and following his resignation, he entered into a contract with UNIFAB to provide the same safety consulting services to UNIFAB.
We therefore agree with the trial judge that this violated the terms of the noncompete agreement. Moreno is entitled to a preliminary injunction prohibiting Black from competing with Moreno in the parishes of Iberia and Lafayette. We must reverse the judgment of the district court and render a judgment on the record granting a preliminary injunction.
Accordingly, it is ordered that the judgment of the trial court is reversed, and a preliminary injunction is issued prohibiting James G. Black and/or his agents, employees, and/or associates from engaging in the like business of Moreno and Associates in the parishes of Iberia and Lafayette, Louisiana, and in particular the contract between James G. Black and/or his company with UNIFAB.
The case is remanded for further proceedings. Black will bear all costs here and below.
REVERSED AND RENDERED; REMANDED.