759 So.2d 1047 (2000)
SWAT 24 SHREVEPORT BOSSIER, INC., Plaintiff-Appellant,
v.
Robbie BOND, Defendant-Appellee.
No. 33,328-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1048 Cook, Yancey, King & Galloway by Bryce J. Denny, J. Todd Benson, Shreveport, Counsel for Appellant.
Tommy K. Cryer, Shreveport, Counsel for Appellee.
Before BROWN and GASKINS, JJ. and SAMS, Judge Pro Tem.
GASKINS, J.
The plaintiff, SWAT 24 Shreveport Bossier, Inc. (SWAT), appeals a trial court judgment refusing to grant the company injunctive relief in the enforcement of a noncompetition agreement with the defendant, Robbie Bond. For the following reasons, we affirm the trial court judgment.

FACTS
SWAT is a construction company that performs insurance restoration work following fires, water damage, hail storms or other similar occurrences. The defendant was initially employed with SWAT as a carpenter and eventually worked his way up to a production manager position. In connection with that promotion, on January 14, 1998, the defendant entered into an employment contract with SWAT which contained a noncompetition clause. Under the terms of the clause, the defendant was obligated not to compete with the plaintiff for two years following termination of his employment with the plaintiff. The pertinent portion of the contract is as follows:
In exchange for giving him confidential and proprietary information or trade secrets to be used in his employment, Employee covenants and agrees that during his employment and for a period of two (2) years following the termination of his employment and for whatever reason, he will not, within the parishes of Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Jackson, Ouachita, Desoto, Red River, Sabine, Bienville, Winn, Caldwell parishes of Louisiana and the municipalities of Shreveport-Bossier, Coushatta, Monroe, Louisiana and East Texas and Southern Arkansas;
a. Directly or indirectly, engage in competition with SWAT 24 Shreveport Bossier, Inc., or serve as an officer, employee, director, agent or consultant of any business, which is in direct or indirect competition with SWAT 24 Shreveport Bossier, Inc.
b. Request or cause any employee of SWAT 24 Shreveport Bossier, Inc., to terminate his or her employment with SWAT 24 Shreveport Bossier, Inc., (unless such actions are with the Employee's authority as SWAT 24 Shreveport Bossier, Inc.); or
c. Offer to employ, employ or enter any business relationship with any employees employed by [sic] during Employees' employment.
SWAT claimed that on June 19, 1998, Mr. Bond resigned his position to work for National Restoration Services (NRS), a company that also performed insurance restoration work in the area. According to the plaintiff, on July 11, 1998, a customer, Buddy Camp, signed a contract with SWAT for restoration work. At some point, Mr. Camp spoke with the defendant and learned that Mr. Bond worked for NRS, not SWAT. Mr. Camp then canceled the contract with SWAT and entered into a contract with NRS to make repairs. On August 14, 1998, SWAT filed a petition for preliminary and permanent injunctive relief and damages, claiming that the defendant violated the noncompetition agreement by working for NRS.
The defendant filed an answer and reconventional demand, denying SWAT's claims and asserting that he is owed $2,600.00 in unpaid wages, $47,287.50 in overtime pay, $41,498.82 in unpaid bonuses and $3,212.50 in personal equipment that was not returned or replaced by SWAT.
A hearing on the plaintiff's petition for injunction was held on March 18, 1999. The parties agreed to enter into evidence the employment contract and a deposition *1049 given by Mr. Bond. William Jeffrey Cowley, the former chief operating officer at SWAT, testified regarding the nature of the business. Mr. Bond testified as to his job duties while employed with SWAT.
On June 22, 1999, the trial court entered judgment in favor of the defendant, denying the plaintiff's claim for injunctive relief. As to the reconventional demands raised by Mr. Bond, the court reserved those issues. In reasons for judgment, the court stated that La. R.S. 23:921 generally prohibits noncompetition agreements except in very limited circumstances set forth in the statute. The trial court then noted that this court considered a similar noncompetition agreement in Summit Institute for Pulmonary Medicine and Rehabilitation, Inc. v. Prouty, 29,829 (La. App.2d Cir.4/9/97), 691 So.2d 1384, writ denied, 97-1320 (La.9/26/97), 701 So.2d 983. In Summit, supra, this court concluded that the language of the agreement under consideration there was a nullity because it was overbroad and went beyond the limited exception provided by the statute by preventing an employee's employment in any capacity with employers in the same field. In the case at hand, the trial court found that the noncompetition clause prohibits the defendant from becoming an employee of a competitor, going beyond the exception provided by the statute. Therefore, the trial court found the clause to be null and void. The plaintiff appealed the trial court judgment.

DISCUSSION
The plaintiff claims that the trial court erred in denying its petition for injunctive relief and in finding that the noncompetition agreement at issue here is null and void. The plaintiff contends that under La. R.S. 23:921(C), a covenant not to compete is lawful if it identifies the parishes and municipalities to which it applies, the employer is carrying on a like business there and the agreement does not exceed two years from the termination of employment. The plaintiff argues that the covenant at issue here complies with these requirements.
The plaintiff also urges that the trial court erred in relying upon Summit Institute for Pulmonary Medicine and Rehabilitation, Inc. v. Prouty, supra. SWAT contends that the case does not apply because in Summit, the employee completely changed positions.[1] In this case, Mr. Bond was a production manager with both SWAT and NRS.
SWAT argues against the application of Summit and contends that at least one appellate court has rejected our reasoning in that case, citing Scariano Brothers, Inc. v. Sullivan, 98-1514 (La.App. 4th Cir. 9/16/98), 719 So.2d 131, writ denied, 98-2588 (La.11/6/98), 727 So.2d 452. According to SWAT, Summit presents too narrow an interpretation of La. R.S. 23:921(C). If Summit is applicable to this case, then SWAT urges that this court should reconsider its holding.
A covenant not to compete contained in an employment agreement is disfavored in Louisiana because it may function to deprive a person of his livelihood. Such a covenant will be enforced only if it meets narrowly drawn criteria. Sentilles Optical Services, Division of Senasco, Inc. v. Phillips, 26,594 (La.App.2d Cir.3/1/95), 651 So.2d 395. The narrow exceptions for a valid noncompetition agreement are set forth in La.R.S. 23:921(C).
La. R.S. 23:921 provides in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, *1050 except as provided in this Section, shall be null and void....
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract....
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
The original version of this statute was enacted amidst the trials of the Great Depression in 1934. The legislature's original intent in enacting the statute was to establish a public policy which would forbid the exclusion of individuals from the fields of work for which they were best suited at a time when the nation's economy was unsettled and could not accommodate the vast numbers of workers in the work force. Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373.
La. R.S. 23:921, as originally drafted, declared null and unenforceable any provision in which an employee agreed not to compete with his employer following the termination of his employment. The public policy of Louisiana, both prior to 1934 and later, as expressed in the statute, has been to prohibit (or severely restrict) non-competition agreements between employers and employees. Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., supra. La. R.S. 23:921(C) provides the limited exceptions for an enforceable agreement not to compete.
Under the statute, an agreement not to compete in a business similar to that of the employer and/or not to solicit customers of the employer is not valid and enforceable unless it is limited to a term of no longer than two years and the parishes or municipalities involved are specified in the agreement. However, the application and interpretation of La. R.S. 23:921 is widely divergent among the various appellate courts of this state. In this circuit, as well as in the Fourth and Fifth Circuits, it is well settled that noncompetition agreements are not enforceable unless the geographic limitations are set forth in the agreement, as required by La. R.S. 23:921(C). Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1002 (La.1992); Sentilles Optical Services, Division of Senasco, Inc. v. Phillips, supra; Medivision v. Germer, 617 So.2d 69 (La.App. 4th Cir. 1993), writ denied, 619 So.2d 549 (La. 1993); Daiquiri's III on Bourbon, Ltd. v. Wandfluh, 608 So.2d 222 (La.App. 5th Cir. 1992), writ denied, 610 So.2d 801 (La. 1993). However, if the geographical limitation in an agreement is overbroad, if possible, it must be reformed and enforced. AMCOM of Louisiana, Inc. v. Battson, 96-0319 (La.3/29/96), 670 So.2d 1223, reversing 28,171 (La.App.2d Cir.1/5/96), 666 So.2d 1227. Further, in some appellate courts of this state, an agreement not to compete is unenforceable *1051 if the clause does not define the employer's business with sufficient specificity. LaFourche Speech and Language Services, Inc. v. Juckett, 94-1809 (La.App. 1st Cir. 3/3/95), 652 So.2d 679, writ denied, 95-0850 (La.5/12/95), 654 So.2d 351; Daiquiri's III on Bourbon Ltd v. Wandfluh, supra.
However, the Third Circuit has maintained a broad interpretation of enforcement of noncompetition agreements, holding that the agreement does not have to specify the parishes of applicability, if they are identifiable, and that a specific definition of the employee's business is not required by La. R.S. 23:921. Petroleum Helicopters, Inc. v. Untereker, 98-1816 (La.App. 3d Cir.3/31/99), 731 So.2d 965, writ denied, 99-1739 (La.8/5/99), 747 So.2d 40; Moores Pump and Supply, Inc. v. Laneaux, 98-1049 (La.App. 3d Cir.2/3/99), 727 So.2d 695; Henderson Implement Company, Inc. v. Langley, 97-1197 (La. App. 3d Cir.2/4/98), 707 So.2d 482.
By contrast, this circuit maintains a very narrow interpretation regarding noncompetition agreements. In Summit Institute for Pulmonary Medicine and Rehabilitation v. Prouty, supra, the defendant was originally a respiratory therapist with Summit and switched to the marketing department, recruiting patients from hospitals without long-term acute care and rehabilitation programs. About two years after he initially began working at Summit, the defendant signed an employment contract with the hospital, containing a noncompetition clause. Under the terms of the contract, the defendant agreed that for one year following the termination of his employment with Summit, he could not become
an officer, director, partner, or employee of or consultant to or act in any managerial capacity with or own any equity interest in any entity which manages or provides long-term acute medical services and/or physical rehabilitation
in certain specified parishes.
Later, Mr. Prouty left his job with Summit and took a position in the marketing department of a competing hospital. When Summit sought to enforce the noncompetition agreement, Mr. Prouty argued that the clause was overly broad under La. R.S. 23:921(C). This court examined the exceptions contained in La. R.S. 23:921(C) and concluded that an employer may only prevent a former employee from engaging in a similar business for himself, i.e., an entire business venture, or from being employed in a competitor's business in a position wherein he solicits the customers of his former employer. We further said:
While it may be reasonable to prevent an employee from forming a business for himself competing directly against his former employer in the first two years after the employee's termination, it is not reasonable to prevent him from accepting employment with an already existing competitor where his new position involves no solicitation of the customers of the former employer. Such interpretation would unreasonably prevent an employee such as Prouty, from employment in the medical field as a computer programmer, respiratory therapist or a maintenance person even though such positions might have no impact on the former employer's ability to compete with the new employer.
In Summit, this court found that the language of the noncompetition agreement went beyond the limited exceptions of Section C of the statute by preventing the defendant's employment in any capacity with other employers in the medical community.[2] Once this offending language was deleted, the agreement contained no enforceable provisions. The agreement in *1052 the present case also prohibits employment with an established competitor in any capacity, language almost identical to Summit. Further, under the reasoning of Summit, whether the employee's actual position with the new employer is the same as he held with the former employer is irrelevant where the entire agreement is overbroad. In the case sub judice, we also have additional language prohibiting the employee from directly or indirectly engaging in competition with the plaintiff. This provision, under the same reasoning, is likewise overbroad. As in Summit, we delete the portions of the agreement that do not comport with the statute on noncompetition agreements, and find that the agreement is left with no language to prohibit that conduct of which the plaintiff complains. The trial court correctly denied the plaintiffs request for an injunction in this case.[3]

CONCLUSION
For the reasons stated above, we affirm the trial court judgment rejecting the plaintiffs petition for injunctive relief to enforce a noncompetition agreement against the defendant, Robbie Bond. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The parties in the present case incorrectly argue that in Summit, the defendant was employed only as a respiratory therapist with Summit and that when he began working for a competitor, he did so in a different capacity. Actually, although Mr. Prouty began work at Summit as a respiratory therapist, he later moved to the marketing department. He then left Summit and went to work in the marketing department of a competing hospital.
[2] We are cognizant of Scariano Brothers, Inc. v. Sullivan, supra, in which the Fourth Circuit rejected the reasoning of Summit, finding that "carrying on or engaging in a business similar to that of the employer" can be prohibited by agreement regardless of whether it is the employee's own business or whether the employee works for another. See also Moreno and Associates v. Black, 99-46 (La.App. 3d Cir.5/5/99), 741 So.2d 91, writ denied, 99-1613 (La.6/16/99), 745 So.2d 606.
[3] Because we find the noncompetition agreement to be overbroad and unenforceable, we do not reach the defendant's argument that SWAT's business was not adequately defined in the agreement, rendering it unenforceable.