LILJEBERG, J.,
CONCURS AND DISSENTS WITH REASONS
Lnl agree with the majority’s decision that the non-circumvention clause is unenforceable because it does' not contain a geographic limitation. However, I disagree with the majority’s conclusion that pursuant to La. R.S. 23:921(L), the non-competition agreement entered into between plaintiff, Frederick E. Yorsch and defendant, Stephen D. Morel, is impermissibly broad and not subject to reformation. I further disagree that the non-competition clause fails to adequately specify the geographic scope of the restraint. Therefore, I would reverse the trial court’s decision to deny plaintiff Frederick E, Yorsch’s request for preliminary injunctive relief and remand the matter to allow the parties the opportunity to present evidence and arguments in support of and against plaintiffs request for a preliminary injunction.
According to the verified petition filed by Mr. Yorsch, Nola Title Company, L.L.C. and ‘My Tax Sales Resources, L.L.C. (the “Companies”) entered into á joint vénture agreement with Archon Information Systems/Civic Source (“Civic Source”) to handle the issuance of title policies and closings for properties adjudicated at tax sales in certain parishes in Louisiana. Mr. Yorsch contends that when the Companies entered into this agreement with Civic Source, he and Mr. Mopel, the only members of the Companies, agreed to enter into the noncompete/non-circumvention • agreement at. issue. Mr. Yorsch contends Mr. Morel breached this agreement by helping Civic Source form a title company which performs the same title and -closing, services as the Compa *1289 nies, and also assisted ⅛Civic Source.in purchasing a title insurance underwriter. Mr. Yorsch alleges that as a result of these acquisitions, Civic Source terminated its joint venture with the Companies and is now a direct competitor. Mr, Yorsch also alleges Mr. Morel assisted Civic Source in obtaining a contract with St. Bernard Parish, which caused the termination of the agreement the Parish previously entered into with the Companies. Mr. Yorsch claims Mr. Morel is working for Civic Source and providing services for tax adjudicated properties which the Companies previously provided.
In its decision, the majority found the following excerpt from the noncompete agreement violates La, R.S. 23:921(L):
directly or indirectly ... working] for, ... be[ing] employed or associated with, or renderting] services or advice or other aid to, or guarantee[ing] any obligation of, any person or entity engaged in any business whose activities compete in any way with the Business or Opportunity. [Emphasis added.]
The majority indicates this language is overbroad because it prohibits Mr. Morel from working in a completely unrelated capacity for a competing company. The majority also concludes the phrase “rendering services” is so broad that it prohibits Mr. Morel from “babysitting for an employee of a company that competes in anyway ...
La. R.S. 23:921(L) permits members to enter into a non-compete agreement to “refrain from carrying on or engaging in a business similar to that of the limited liability company.” After reviewing the majority’s opinion, it is apparent the central issue in this matter is whether the excerpt from the non-compete agreement, quoted above does more than prohibit Mr. Morel from carrying pn or engaging in a business similar to that of the limited liability company. For the reasons stated more fully below, I agree the phrase “associated with, or rendering] services or advice or other aid to” contained in the non-compete agreement is overly broad. However, this language- can be easily excised from the non-compete' clause [22pursuant to the broad severability clause contained in Section 6 of the parties’ agreement.[6] Otherwise, I do not find that the remainder of the non-compete provision which prohibits an employee from “directly or indirectly” “working] for” or “being employed” by a person or entity engaged in a competing business violates La. R.S. 23:931(L).
As the majority recognizes, no Louisiana appellate court has interpreted La. R.S. 23:921(L). Therefore, in order to determine the limitations intended by the phrase “carrying on or engaging in a business similar to that of the limited liability company” contained in Section (L), it is instructive to review the legislative history and case law relevant to the similar language contained in other provisions of La. R. S. 23:921.
This language first appeared in La, R.S. 23:921 when the Louisiana legislature engaged in a wholesale revision of this statute in 1989 (Acts 1989, No. 639), which provided as follows:
A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade or business of any kind, *1290 except as provided in this Section, shall be null and void.
B. A person who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years.
C. A person who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years.
| j>.gD. Upon or in anticipation of a dissolution of the partnership, partners may agree that none of the partners will carry on a similar business within the same parish or parishes, or municipality or municipalities, or within specified parts thereof, where the partnership business has been transacted, not to exceed a period of two years. [Emphasis added].[7]
In 2000, the Louisiana Supreme Court granted a writ of certiorari in Swat 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La. 9/29/00), 769 So.2d 1217, to resolve a split among the circuit courts of appeal regarding the proper interpretation of the phrase “carrying on or engaging in a business similar to that of the employer” contained in Subsection C. The split existed between the Second Circuit Court of Appeal on one' side and the Third and Fourth Circuit Courts of Appeal on the other. The Second Circuit in SWAT 24 Shreveport Bossier, Inc. v. Bond, 33,328 (La. App. 2 Cir. 5/10/00), 759 So.2d 1047, and Summit Institute for Pulmonary Medicine & Rehabilitation, Inc. v. Prouty, 29,829 (La. App. 2 Cir. 4/9/97), 691 So.2d 1384, interpreted Section C as only allowing the employer to prevent a former employee from engaging in a similar business actually owned by the employee.
In contrast, the Third Circuit in Moreno & Assocs. v. Black, 99-46 (La. App. 3 Cir. 5/5/99), 741 So.2d 91, followed the Fourth Circuit’s decision in Scariano Bros., Inc. v. Sullivan, 98-1514 (La. App. 4 Cir. 9/16/98), 719 So.2d 131, and interpreted the language in Subsection C as allowing the employer to prohibit the former employee from engaging in a business similar to that of the employer whether it is the employee’s own business or whether the employee works for another competing business.
laJn 2001, the Louisiana Supreme Court upheld the Second Circuit’s decisions and interpreted the phrase “carrying on or engaging in a business similar to that of the employer” in La. R.S. 23:921(C), to mean carrying on or engaging in the employee’s own business similar to that of the employer. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La. 6/29/01), 808 So.2d 294. *1291 In response to the SWAT decision, the Louisiana Legislature, by Acts 2003, No. 428, § 1, amended La. R.S. 23:921 to add Subsection H (now Subsection D), which provided that a person who becomes employed by a competing business may be deemed to be carrying on or engaging in a similar business, thereby essentially siding with the Third and Fourth Circuits decisions in Moreno and Scariano, supra:
For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing. [Emphasis added.][8]
I first note that the plain language of Section D does not contain any language which prohibits an employer from obtaining an agreement from'the employee to refrain from working for a competitor in any capacity. It merely refers to “a person who becomes employed by a competing business.” If Morel chose to switch his profession to babysitting or boiling craw-fish, I do not think that prohibiting him from providing these services to the few entities that may provide closing and title services for tax adjudicated properties for two years would prohibit him from pursuing his new profession.
Regardless, rather than finding the entire non-compete agreement to be null and void, I believe that the proper determination would be to simply remove the | ^potentially overbroad language, “associated with, or rendering] services or advice or other aid to,” from the agreement. As explained in the cases discussed more fully below, courts have repeatedly upheld non-compete clauses which contain language similar to the non-compete clause at issue once the language quoted above is stricken:
... neither Member shall directly or indirectly perform any of the following activities: work for, manage, operate, control, engage or participate in (whether as a principal, agent, representative, proprietor, member, consultant, partner or employee), or engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, be employed by or associated with, or render services or advice or other aid to, or guarantee any obligation of, any person or entity engaged in any business whose activities compete in any way with the Business or the Opportunity.[9]
In Moreno, supra, the trial court determined the following non-compete language, which is similar to the provision at issue as *1292 revised above, did not exceed the boundaries established in La. R.S. 23:921(C):
... directly or indirectly own, manage, operate, control, be employed by, participate in (whether as a proprietor, partner, stockholder, director, officer, Employee, agent, consultant, joint venture, investor, or other participant), or be connected in any manner with the ownership, management, operation, or control of any Person or business in direct competition with the business conducted by EMPLOYER at time of such termination ....
741 So.2d at 93-94.
In reaching its decision, the Moreno court specifically found this language fell within the limitation of “carrying on or engaging in a business similar to that of the employer” set- forth in La. R.S. 23:921(C):
The statute permits an employer to prohibit its employee “from carrying on or engaging in a business similar to that of the employer ...” La.R.S. 23:921(0. Moreno is in the business of safety consulting. Clearly, the company needs to restrict its employees from taking the invaluable information and skills learned from Moreno and then competing with Moreno in the same vicinity immediately thereafter. The language in Moreno’s contract, which concerned the trial court, 1 ¡^expressly addresses this need. The language, however, is not overly broad—it restricts an employee’s participation only with a “person or business in direct or indirect competition” with Moreno. The language cannot act to limit Black from working in any capacity with a competitor; however, it can properly operate to prohibit those actions which directly or indirectly compete with Moreno’s business. See. Scariano, 719 So.2d 131.
Therefore, we find that Moreno’s contract validly operates to prevent its employees from leaving Moreno’s employ and competing in a business in direct or indirect competition with Moreno’s business at the time the employee is terminated. The contract’s language falls within permissible bounds of La. R.S. 23:921.
Id. at 94-95.
The Moreno court noted its decision was based on rulings rendered by other courts upholding similar non-compete language, particularly the Fourth Circuit’s decision in Scariano, supra:
In Scariano Bros., 719 So.2d 131, the fourth* circuit upheld a noncompete agreement containing a provision similar to that-with which we are faced. That provision expressly prohibited the employee from engaging in or taking part in the company’s business or in a business similar thereto whether “as owner, principal, agent, _ partner, officer, employee, independent contractor, consultant, stockholder, licensor or otherwise ..,. ” Id. at 134. The court struck down only one provision, of the contract which attempted to prohibit the employee from “rendering services” to another competitor. The court noted that this language could be interpreted to prevent the employee from working in a capacity with a competitor which did not fall within the statute’s “carrying on or engaging in a business similar” to that of the employer. The Scariano court simply severed the offending provision in deference to the contract’s severability clause and upheld the remainder of the contract. With the exception of the phrase “rendering services to,” the court found that the language of the provision conformed to the statute.
*1293 Id. at 94. [Emphasis added.][10]
More recently, in Restored Surfaces, Inc. v. Sanchez, 11-529 (La. App. 5 Cir. 12/28/11), 82 So.3d 524, 529, this Court determined that a cause of action | existed for breach of a non-compete clause, which required an employee to refrain from:
[d]irectly or indirectly owning, managing, operating, joining, controlling, being employed by, or participating in the ownership, management, operation or control of, or being connected in any manner with any business engaged to any extent in a business similar to that of SURFACE RESTORATION, INC. or any of its subsidiary corporations, or any of its parent corporations, in competition with SURFACE RESTORATION, INC.
In Class Action Claim Servs., LLC v. Clark, 04-591 (La. App. 5 Cir. 12/14/04), 892 So.2d 595, 599, this Court stated that “[o]n its face, the [following] non-compete clause at issue herein complies with [La. R.S. 23:921(C)]”:
The agent shall not, for a period of two (2) years following termination (for any reason) of this agreement directly or .indirectly compete with the business of the Company ....
The term “not compete” as used herein shall mean that the Agent shall not own, manage, operate, consult with, be employed, or enter into any agreement or any type or nature with another entity in competition with the Company or in a business substantially similar to or competitive with the present business of the Company or such other business in which the Company may substantially engage during the term of the Agreement.
Based on the foregoing, I would sever the phrase “associated with, or rendering] services or advice or other aid to," and reform the non-compete agreement. Once this language is removed I believe that, on its face, the noncompete clause at issue complies with La. R.S. 23:921(L).
. I also disagree with the majority’s decision that the non-competition clause adequately fails to specify the geographic scope of the restraint because the clause includes the defined term “business” and this term includes a right of first refusal to expand into other locations. The non-compete clause lists nine parishes and three cities that are covered by the agreement. It further requires the parties to amend the non-compete clause if other locations are added in the future. | ¡^Therefore, based on the plain language of the non-compete agreement, I find no basis to conclude that it fails to specify the geographic scope of the provision.[11]
I would finally find the exceptions filed by Mr. Morel for the first time on appeal on the eve of oral argument should be denied.

. The< severability clause provides that if any provision of the agreement is found invalid, then the "[m]embers intend for any court construing this agreement to modify or limit such provision temporally, spatially or otherwise so as to render it valid and enforceable to the fullest extent allowed by law.” The severability clause is quoted in its entirety in the majority opinion.,

. In response to suggestions from business groups, the legislature amended the statute again in 1990, adding corporations and shareholders to the definition of "any person” under the statute (Acts 1990, No. 201, § 1) and adding an exception to cover computer programmers who work in the software industry (Acts 1990, No. 137, § 1); in 1991, adding exceptions for franchisors and franchisees (Acts 1991, No. 891, § 1); in 1995, expanding agreements to cover independent contractors (Acts 1995, No. 937, § 1); and in 1999, to provide for validity of choice of law and forum clauses (Acts 1999, No. 58, § 1).

. I recognize La. R.S. 23:921(D), states it applies to Sections B and C. However, I see no reasonable basis to assume the Legislature intended for the phrase “carrying on or engaging in a business similar to that of the limited liability company” to be interpreted differently or mbre restrictively in Section L, than in Sections B, C and D. It defies common sense to interpret Subsection L in a manner that would impose greater restrictions on non-compete agreements entered into with members of a limited liability company who possess much greater bargaining power, than agreements imposed under Section C on employees with no ownership interest.

. In SWAT 24, 808 So.2d at 309, the Louisiana Supreme Court recognized the courts’ ability to sever and reform a non-compete clause in accordance with the parties’ intent expressed in a severability clause. See also Vartech Sys. v. Hayden, 05-2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 256-57, permitting reformation of a non-compete clause under similar circumstances.

. I recognize the Moreno and Scariano cases were decided prior to the 2003 amendment (Acts 2003, No. 428, § 1), but I. note this Court has recognized the Louisiana legislature's 2003 amendment adding Section D only served to broaden the scope of valid and permissible non-compete clauses. Restored Surfaces v. Sanchez, 11-529 (La. App. 5 Cir. 12/28/11), 82 So.3d 524,

. Evidence regarding the areas where the Companies actually conducted business could lead to a different conclusion. However, the trial court stopped the preliminary injunction proceedings before the parties presented evidence regarding this issue.