STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-478


H. B. RENTALS, LC, ET AL.

VERSUS

MAURICE BLEDSOE, JR.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20086279
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

AFFIRMED.


Robert B. Worley, Jr.
Jones, Walker, et al.
201 St. Charles Avenue, 47th Floor
New Orleans, LA 70170-5100
(504) 582-8000
Counsel for Plaintiffs/ Appellants:
Superior Energy Services, Inc.
H. B. Rentals, LC

Joel P. Babineaux
Babineaux, Poche, Anthony & Slavich, LLC
P. O. Box 52169
Lafayette, LA 70505-2169
(337) 984-2505
Counsel for Plaintiffs/Appellants:
Superior Energy Services, Inc.
H. B. Rentals, LC

**Michael P. Maraist**
**Maraist Law Firm**
**600 Jefferson Street, Suite 403**
**Lafayette, LA 70501**
**(337) 266-2230**
**Counsel for Defendant/Appellee:**
**Maurice Bledsoe, Jr.**

**Michael Y. McCormick**
**McCormick, Hancock & Newton**
**1900 W. Loop South, Suite 700**
**Houston, TX 77027**
**(713) 297-0700**
**Counsel for Defendant/Appellee:**
**Maurice Bledsoe, Jr.**

**GREMILLION, Judge.**

H.B. Rentals, L.C., and Superior Energy Services, Inc. (H.B.) appeal a partial summary judgment rendered in favor of Maurice Bledsoe, Jr., dismissing their demands against Bledsoe seeking injunctive relief and damages. For the reasons that follow, we affirm.

## FACTS

Bledsoe was the president of H.B. when it was acquired by Superior in 2000. At the time, he signed an agreement not to compete with H.B. and not to solicit H.B.'s customers for a period of two years following termination of his employment. The agreement "restricted" the geographic territory within which Bledsoe was prohibited from competing and soliciting in accordance with an appendix thereto, as well as within the States of Texas, Mississippi, Alabama and Florida. The appendix lists all 64 Louisiana parishes. The agreement contained no severance, but did stipulate that its terms were not binding if Bledsoe was terminated for reasons other than disability or for cause. Bledsoe resigned from H.B. in August 2008, and went to work for TanMar Rentals, LLC, a competitor of H.B.. H.B. then filed suit.

Bledsoe filed a motion for partial summary judgment in which he asserted that the agreement was overly broad, and that the consequence of the contract's overbreadth was its nullity. Bledsoe based this argument on the supreme court's decision in *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 00-1695 (La. 6/29/01), 808 So.2d 294, which held that the statute governing non-compete agreements, La.R.S. 23:921, merely prohibited an employee subject to such an agreement from operating his own business and not being employed by another. He further argued that the provisions of La.R.S. 23:921(H) were enacted after he signed the agreement, and are not applicable to his case. Thus, he argued, the agreement did not prohibit his

1

employment with TanMar.

The trial court granted Bledsoe's motion for partial summary judgment as to the allegations of H.B. that he violated the agreement by his employment with TanMar, and seeking injunctive relief. H.B. then perfected this appeal.

**ANALYSIS**

Non-compete agreements (non-competes) are governed by La.R.S. 23:921. Section (A)(1) (emphasis added) opens with a very strong statement of public policy disdain for these contracts:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, *shall be null and void.*

Since its enactment in 1962 by Act 104, this statute has undergone several amendments, most of which were aimed at addressing situations that were simply not contemplated by the legislature in the original bill, such as relationships between franchisors and franchisees and the creation of limited liability companies. Many amendments, though, were aimed at strengthening the enforcement of these agreements. The trend in the jurisprudence, as well, seems to have swung in the direction of greater enforceability of non-competes.

Prior to 2003, paragraph (D) was not included in §921.[1] Paragraph (D) specifically provides that a person who becomes employed by a competitor may be deemed to be carrying on or engaging in a similar business. Thus, in *SWAT 24*, a 2001 case, the production manager of a construction company was not barred from employment by another construction company in which he held no equity interest. The Louisiana Supreme Court interpreted paragraph (C) of the statute to only allow

---

[1] This was amended by Acts 2003, No. 428. The paragraph was originally designated as (H), but was redesignated (D) upon approval by the governor under authority granted to the Louisiana Law Institute.

an employer to prohibit his former employee from establishing his own business in competition with the former employer. The rationale was the use by the legislature of the phrase "carrying on or engaging in a business similar to that of the employer," as the conduct that could be enjoined by such an agreement. Carrying on or engaging in a business is not synonymous with accepting employment.

Thus, in the form the statute took when the non-compete was executed by Bledsoe, such agreements could not restrain one from leaving the employ of another and going to work as an employee of his competitor; rather, one was allowed to restrain one's employees only from setting up their own businesses in competition. *See Swat 24*, 808 So.2d 294.

Before the trial court, H.B. acknowledged that the law governing the interpretation of this non-compete was the version in existence in 2001. However, it contends a genuine issue of material fact exists regarding whether Bledsoe is an owner of TanMar. H.B. propounded discovery to Bledsoe seeking information on this issue, but Bledsoe had not deigned to answer that discovery at the time his motion for partial summary judgment was heard. However, we note that in support of his motion, Bledsoe executed an affidavit attesting to a complete lack of ownership interest in TanMar.

Appellate courts review grants of summary judgment de novo, applying the same standards as would a trial court. *Schroeder v. Bd. of Sup'rs. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966, as amended by Act 483 of 1997, provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not

3

require him to negate all essential facts of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606.

H.B. argued before the trial court that it was entitled to discovery on the ownership issue and summary judgment is thus premature. However, in opposition to Bledsoe's motion, it offered nothing in terms of even suggesting to the trial court what areas "not addressed by the affidavit" it wished to question Bledsoe about. The only specific questions it has identified are Bledsoe's role in TanMar, negotiations leading up to his employment and any employment agreements he has with TanMar. The negotiations are not relevant, nor are any employment agreements except to the extent they might place Bledsoe in an equity ownership capacity with TanMar, which is addressed specifically in Bledsoe's affidavit. Bledsoe's role in TanMar, except to the extent that he would be conferred with an ownership interest or directly soliciting H.B.'s customers, which we will address infra., is similarly irrelevant.

The subject agreement distinguishes between competing against H.B. and soliciting H.B.'s customers, both current and potential. Section 921 makes no such distinction between non-competes and so-called "non-solicitations." The provisions applicable to one apply to the other, including the geographic designation requirements. Both are contained in paragraph (C). While the agreement contains a very broad geographic designation, the non-solicitation clause contains none. Under the plain terms of §921, it is null and void. However, H.B. maintains that our decision in *Petroleum Helicopters, Inc. v. Untereker*, 98-1816 (La.App. 3 Cir.

4

3/31/99), 731 So.2d 965, *writ denied*, 99-1739 (La. 8/5/99), 747 So.2d 40, governs and renders the non-compete valid. The issue in *Petroleum Helicopters*, as in the present matter, is the geographic specificity of the non-compete. Paragraph (C) of § 921 allows the execution of a non-compete within "a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein." In *Petroleum Helicopters*, the non-compete simply prohibited the defendant from competing "within the parishes which PHI carries on a like business." *Id*. at 968. Our reasoning in enforcing the non-compete was that although the parishes were not specified, they were identifiable.

We find a very clear distinction between an employer attempting to comply with the statute by narrowly tailoring an albeit somewhat flawed non-compete, and one drafting an agreement that is overly broad such as the present agreement. Here, H.B. not only fails specifying the parishes or municipalities in which Bledsoe is prohibited from soliciting customers, it also attempts to prohibit him from soliciting *potential* customers. We cannot discern whether this refers to customers of H.B. at the time of the agreement, at the time Bledsoe left H.B.'s employ, or at any time present or future. The inclusion of potential customers is particularly troubling, in that it can be assumed that any entity in the field is a potential customer. Unlike the situation in *Petroleum Helicopters*, this provision is simply so overly broad that any attempt to reform it would not be in keeping with either the letter or spirit of the statute.

Before this court, H.B. argues that summary judgment was premature and it is entitled to additional discovery in order to determine whether Bledsoe had any knowledge of the parishes in which H.B. did business. This would be relevant, it argues, for purposes of determining the validity of the agreement under the *Petroleum*

5

*Helicopters* case. This would be true, however, only if the agreement could validly prohibit Bledsoe from becoming an employee of TanMar without acquiring an equity interest in it. The total lack of any reference to geographic limits to the non-solicitation agreement renders it null and void.

**CONCLUSION**

Agreements in restraint of trade are generally disfavored as evidenced by the language of La.R.S. 23:921. Any such agreement that does not comply with the statute's dictates is declared by the legislature to be null and void. The law governing the agreement between H.B. and Bledsoe is the law that existed when the agreement was confected in 2000. At that time, §921 did not prohibit one from becoming an employee of a competitor of one's former employer.

Therefore, Bledsoe, who has no ownership interest in TanMar, is not in violation of the agreement to not compete against H.B. The agreement not to solicit current or potential customers of H.B. is overly broad to the point that the court is unable to reform it. In the latter regard, it fails in two respects: it does not designate the parishes or municipalities in which Bledsoe is prohibited from soliciting customers, and it purports to prohibit him from soliciting potential customers.

The judgment rendered by the trial court is affirmed. All costs of appeal are assessed against plaintiffs/appellants, H.B. Rentals, L.C., and Superior Energy Services, Inc.

**AFFIRMED**.

6