901 So.2d 553 (2005)
CLEAR CHANNEL BROADCASTING, INC.
v.
Kenneth BROWN, Anitra Davis, Michael E. Francois, III and Garry L. Warrior.
No. 2004-CA-0133.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 2005.
*554 Leslie A. Lanusse, Raymond P. Ward, Elizabeth N. Anderson, Adams and Reese LLP, New Orleans, LA, for Plaintiff/Appellant, Clear Channel Broadcasting, Inc.
Michael L. Eckstein, David C. Raphael, Jr., Eckstein Law Firm, APC, New Orleans, LA, for Defendants/Appellees, Kenneth Brown, Anitra Davis, Michael E. Francios and Garry L. Warrior.
(Court composed of Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiff, Clear Channel Broadcasting, Inc. ("Clear Channel"), owns and operates several radio stations in the New Orleans area, including WYLD-AM and WYLD-FM. In late September and early October 2003, the defendants, Kenneth Brown, Anitra Davis, Michael E. Francois, III, and Garry L. Warrior, Sr., all employees of Clear Channel, each resigned their respective position at WYLD-AM or WYLD-FM and went to work for Citadel Broadcasting Corporation ("Citadel"), Clear Channel's competitor. Shortly after learning that the four former employees were working for Citadel, Clear Channel filed suit to enjoin them from breaching the non-competition agreement contained in their respective employment contracts. Following a hearing, the trial court denied injunctive relief and Clear Channel appealed. After reviewing the law and the record, we affirm the district court judgment.

FACTS
Defendant Kenneth Brown was hired by Clear Channel on December 23, 2002, to work at WYLD-FM. At the time of his hiring, Clear Channel had Mr. Brown sign a document titled, "Clear Channel Communications Confidentiality, Trade Secrets, and Non-Compete Agreement," which purportedly restricted his right to compete with Clear Channel after his termination of employment with them. Mr. Brown had not entered into a formal written employment contract and, thus, Clear Channel could terminate him "at will." In September 2003, Mr. Brown was working part-time earning $7.21 per hour with no benefits when he resigned his position to accept a full-time position with higher pay and benefits at KMEZ-FM, a Citadel owned radio station.
Defendant Anitra Davis was hired by Clear Channel in December 2000, to work at WYLD-FM. She, too, signed the Clear Channel non-compete agreement and was an at will employee. After not receiving a pay raise in nearly three years, even *555 though her job duties had increased, Ms. Davis resigned her position and went to work for KMEZ-FM, earning double her former salary.
Defendant Michael Francois went to work for Clear Channel in September 1998, as a part-time employee with no benefits. At the time of his hire, he signed a document that contained a non-compete clause but Clear Channel's general manager failed to sign and execute the agreement. In September 2003, Mr. Francois resigned his part-time position with Clear Channel and accepted a full-time position with benefits and more pay at WOPR/WPRF, a Citadel radio station.
Defendant, Garry Warrior, was hired in April 1993 by Snowden Broadcasting, Inc.[1] ("Snowden"), to work as a full-time announcer and program director at WYLD-AM. At that time, Mr. Warrior signed a document that purported to restrict his rights to compete with Snowden after the termination of his employment. He had no formal written employment contract governing the terms of employment with Snowden and was considered an at will employee. Mr. Warrior neither entered into a formal employment contract with Clear Channel after it acquired Snowden nor did he sign a new non-compete agreement. In October 2003, Mr. Warrior resigned his position at WYLD-AM to accept a higher paying job with better work conditions at WOPR/WPRF.

LAW AND DISCUSSION
Clear Channel argues on appeal that the trial court erred in determining that it was not entitled to an injunction without a showing of irreparable harm. Specifically, it contends that to obtain injunctive relief, La. R.S. 23:921, the statute regulating non-competitive agreements, required it to prove only that each defendant had signed a non-compete agreement and was violating his/her respective agreement. The defendants concede that Clear Channel did not have to prove irreparable harm to obtain injunctive relief pursuant to La. R.S. 23:921(H) if it proved that they had failed to perform their obligations under their respective non-compete agreements. However, the defendants contend that Clear Channel did not satisfy its burden because it failed to prove that they had breached their obligations under their respective non-compete agreements given the version of La. R.S. 23:921 that was in effect at the time the parties entered into the non-compete agreements.
Generally, a moving party is entitled to the issuance of a preliminary injunction only if he proves the existence of three elements: (1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case. St. Raymond v. City of New Orleans, 99-2438, p. 3 (La.App. 4 Cir. 5/17/00), 769 So.2d 562, 564. A trial judge has great discretion to grant or to deny injunctive relief. A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, p. 9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708.
Louisiana has had a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 4 (La.6/29/01), 808 So.2d 294, 298; Louisiana Smoked Products, *556 Inc. v. Savoie's Sausage & Food Products, 96-1716, p. 11 (La.7/1/97), 696 So.2d 1373, 1379. Thus, Louisiana's longstanding public policy has been to prohibit or severely restrict such agreements. Id. This public policy is expressed in La. R.S. 23:921(A)(1), which provides:
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
Louisiana's strong public policy restricting non-competition agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. See McAlpine v. McAlpine, 94-1594, p. 11 (La.9/5/96), 679 So.2d 85, 91. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking enforcement. SWAT 24 at p. 5, 808 So.2d at 298.
The exceptions to La. R.S. 23:921(A)(1) set forth in the statute include employer/employee relationships, corporation/shareholder relationships, partnership/partner relationships and franchise/franchisee relationships. The statute defines the limited circumstances under which a non-competition clause may be valid in the context of each of these relationships. The exception at issue in the instant case is provided for by Subsection C, which reads, in pertinent part:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. [Emphasis added.]
La. R.S. 23:921(C).
The Louisiana Supreme Court interpreted the phrase "carrying on or engaging in a business similar to that of the employer" in La. R.S. 23:921(C) to mean carrying on or engaging in the employee's own business similar to that of the employer. See SWAT 24 at p. 19, 808 So.2d at 307 (emphasis added). In 2003, the Louisiana Legislature, by Acts 2003, No. 428, § 1, amended La. R.S. 23:921 to add Subsection H, relating to a person who becomes employed by a competing business.[2] Subsection H (now Subsection D) provides:
For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
Thus, as of August 15, 2003, the effective date of the amendment, La. R.S. 23:921 *557 allows an employer to enter into an agreement with his employee preventing that employee from starting his own business and, in some instances, preventing the employee from becoming employed by a competitor. Furthermore, in the event an employee enters into an agreement with his employer not to compete pursuant to La. R.S. 23:921 and fails to perform his obligation there-under, pursuant to Subsection H of the statute, the court shall order injunctive relief, even without a showing of irreparable harm, upon proof by the employer of the employee's failure to perform under the non-compete agreement.
The defendants contend that at the time they entered into their non-compete agreements with Clear Channel, La. R.S. 23:921 did not prohibit an employee who had executed a non-compete agreement from going to work for his employer's competitor upon termination of his employment. The statute, they argue, only prohibited the employee from engaging in his own business similar to that of the employer for a period not to exceed two years from his termination of employment. Clear Channel, on the other hand, argues that the current version of La. R.S. 23:921, as amended in 2003, applies because it was in effect at the time the defendants allegedly breached their non-compete agreements.
With respect to the applicability of La. R.S. 23:921, Louisiana courts routinely have held that the provisions of the statute that were in effect at the time the employment agreement in question was executed were applicable in determining whether the non-competition provisions contained therein were enforceable. See Louisiana Smoked Products, Inc., 96-1716 at p. 10, 696 So.2d at 1377-78; Barbe v. A.A. Harmon & Company, 94-2423, p. 19 (La.App. 4 Cir. 1/7/98), 705 So.2d 1210, 1221; Walker v. Louisiana Health Management Company, 94 1396 (La.App. 1 Cir 12/15/95), 666 So.2d 415, 426; Alexandria Anesthesia Service v. Firmin, 576 So.2d 1236 (La.App. 3rd Cir.), writ granted in part with order and denied in part, 580 So.2d 918, 927 (La.1991). More recently, in Hose Specialty & Supply Management Co., Inc. v. Guccione, 03-823 (La.App. 5 Cir. 12/30/03), 865 So.2d 183, the Fifth Circuit Court of Appeal declined to apply the 2003 amended version of La. R.S. 23:921 to a case in which the employee executed the employment contract in 1997 and terminated his employment in 2003. The Court noted that considering the 2003 amendment affected contractual rights, it constituted a substantive change in the law, and therefore, could only apply prospectively. Id. at 193, fn. 1.
Furthermore, where a statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of the contract, even though the act giving rise to the obligation occurs after the effective date of the statute. Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983).
In the instant case, the four non-competition agreements at issue were executed in the time period from 1993 to 2002, prior to the effective date of the 2003 amendment to La. R.S. 23:921. Furthermore, the provisions of La. R.S. 23:921 that are applicable to the employment contracts herein are the same provisions that were applicable in SWAT 24, supra, wherein the Supreme Court held that the employer was precluded from enforcing a non-competition agreement that prohibited the employee from becoming employed by a competitor of the employer. Thus, each of the defendants herein had a vested right to *558 leave Clear Channel to take a position at another radio station in the New Orleans area provided he/she did not start his/her own competing business, and the provision of his/her non-competition agreement that sought to prevent him/her from taking another position was unenforceable and contrary to public policy.
Clear Channel also argues in its brief that the Supreme Court's decision in SWAT 24, supra, should not bar the enforcement of the non-competition agreements executed by Mr. Warrior, Mr. Francois, and Ms. Davis because the decision was not established precedent when these three defendants entered into their employment contracts in 1993, 1998, and 2000, respectively. We find no merit to this argument.
The Supreme Court granted a writ of certiorari in SWAT 24[3] to resolve a split among the circuit courts of appeal regarding the proper interpretation and application of the 1989 version of La. R.S. 23:921(C).[4] As previously mentioned, the Supreme Court interpreted the limited exception found in Subsection C to apply only to those non-compete agreements in which the employee agrees to refrain from carrying on or engaging in his own business similar to that of the employer. Although the Supreme Court's SWAT 24 decision had not been decided when Mr. Warrior, Mr. Francois, and Ms. Davis executed their respective non-compete agreements, the 1989 version of La. R.S. 23:921(C) was in effect at that time, and the SWAT 24 decision is the latest Supreme Court jurisprudence interpreting it.
Even though La. R.S. 23:921 mandates the court to issue injunctive relief upon proof of the obligor's failure to perform without the necessity of proving irreparable injury, Clear Channel must still establish that it is entitled to relief under that version of the statute that was in effect at the time the parties executed the non-compete agreements. It cannot do so in this case because the action of its former employees was not prohibited by La. R.S. 23:921(C) at the time the parties signed the non-compete agreements.

CONCLUSION
Accordingly, the trial court's judgment denying Clear Channel's request for injunctive relief is affirmed.
AFFIRMED.
NOTES
[1] Clear Channel acquired the assets of Snowden Broadcasting, Inc., which included WYLD-AM, in 1995, following a bankruptcy sale.
[2] Section 2 of Acts 2003, No. 428, instructed the Louisiana Law Institute, upon passage of the Act and signature by the governor, to redesignate Subsection H as Subsection D and to redesignate Subsections D through G as Subsections E through H. The Law Institute did so. Thus, Subsection H, as enacted by Act. No. 428, is now Subsection D of La. R.S. 23:921.
[3] SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.9/29/00), 769 So.2d 1217.
[4] Specifically, the Second Circuit Court of Appeal in SWAT 24 Shreveport Bossier, Inc. v. Bond, 33,328 (La.App. 2 Cir. 5/10/00), 759 So.2d 1047 and Summit Institute for Pulmonary Medicine & Rehabilitation, Inc. v. Prouty, 29,829 (La.App. 2 Cir. 4/9/97), 691 So.2d 1384, interpreted the exception provided for in La. R.S. 23:921(C) to allow the employer to prevent a former employee from engaging in a similar business for himself. In contrast, the Third Circuit Court of Appeal in Moreno & Assocs. v. Black, 99-46 (La.App. 3 Cir. 5/5/99), 741 So.2d 91, followed our decision in Scariano Bros., Inc. v. Sullivan, 98-1514 (La.App. 4 Cir. 9/16/98), 719 So.2d 131, interpreting Subsection C to allow the employer to enforce a non-competition agreement that prohibited the former employee from engaging in any business similar to that of the employer whether it is the employee's own business or whether the employee works for another.