EDWIN A. LOMBARD, Judge.
| plaintiff, Choice Professional Overnight Copy Service, Inc., appeals to this Court the denial of a Request for Preliminary Injunction against defendants David M. Galeas, Nathan Martin, Kevin Stevens, and Jason Broussard. For the following reasons, we find no abuse of discretion in denying the request for preliminary injunction and affirm the judgment of the trial court.

Factual and Procedural History

Choice Professional Overnight Copy Service, Inc. (hereafter “Choice”) is a copy service and litigation support business. Defendants, David M. Galeas, Nathan Martin, Kevin Stevens, and Jason Brous-sard, were all employed by Choice. Mr. Galeas began his employment with Choice on July 8, 1996. Mr. Stevens began his employment at Choice on or about January 2, 2001. Mr. Martin started working at Choice in August 2001.
Mr. Stevens, Mr. Galeas, and Mr. Martin were employed as salesmen at Choice. They were paid an hourly wage as their base salary and received commission payments based upon their monthly gross sales. In addition, they |2received monthly profit payments based upon a formula representing a share of Choice’s monthly profits. On the fifth day of every month, each salesman received a paycheck in the amount of half of his hourly pay, and on the twentieth day of each month they would receive two payments, one being the remainder of his hourly wage and the second being his profit payment check.
In November 2002, Mr. Greg Cummings, the President and owner of Choice, advised Stevens, Galeas, and Martin that he wanted all salesmen to execute non-competition and non-solicitation agreements with Choice. On Friday, December 20, 2002, Jay Geiger, the Controller for Choice and executive in charge of human resources, presented the three salesmen with an “Agreement Not to Unfairly Compete With or Solicit Employees from Choice Professional Overnight Copy Service, Inc.” (hereafter “Agreement”). Geiger informed Stevens, Galeas, and Martin that they would not receive their monthly profit checks unless they signed this Agreement. The Agreement stated that its “purpose” was to confirm their agreement “not to: 1) compete unfairly with Choice; 2) use or reveal Choice’s trade secrets and proprietary information; or 3) solicit Choice’s employees.” The Agreement, in pertinent part, further stated:
Your obligations in this Agreement constitute mandatory conditions of your Choice employment. Consequently, you agree that:
(1) Clients that you have been servicing in your office within the last year of your employment (“the Clients”) and . potential clients (“the Potential Clients”) that you, or anyone in the office has had any contact within the *1218 last year of your employment are Choice’s property. Should you leave Choice for any reason, then for 1 year after your employment ends, whether you work in Louisiana, or any other state, you will not contact nor solicit lathese Clients and Potential Clients. You will also not assist anyone else, including your new employer or new co-employees, from contacting, soliciting or providing services for these Clients or Potential Clients.
The Agreement further stated that these “non-compete obligations” existed in the geographic locales set forth in an attached list. Attached to each copy of the Agreement signed by Stevens, Galeas, and Martin was a list of 53 Louisiana Parishes and 53 Louisiana municipalities labeled as “Exhibit A — Parishes and Municipalities in Louisiana in which Competition Prohibited.” The Agreement also stated that the salesmen — signees were prohibited from becoming, an owner, shareholder, or partner for any competing copy service during this time period. The Agreement also stated that “[pjrovided you abide by this Agreement, you have the right to work as an employee for any other copy service, upon leaving Choice.” Galeas, Stevens, and Martin each signed copies of the Agreement on or around December 20, 2002.
Mr. Broussard began working at Choice in June 2008. He alleges that he was only an hourly worker and not compensated on the basis of sales or company profits. When he was offered a salesman position in March 2010, he was required to sign a similar non-competition and non-solicitation agreement. The Agreement signed by Mr. Broussard was different from the December 2002 Agreements only in that his agreement did not even allow him to work for a competitor copy services company for two years.
On September 30, 2010, Broussard, Stevens, Galeas, and Martin resigned effective immediately from Choice. A week later, they began working at Alliance Overnight Document Service, L.L.C. (hereafter “Alliance”). Alliance is an overnight copy and litigation support business founded by Bryan K. Broussard, the |4former Vice-President of Choice, who also resigned on September 30, 2010. Alliance was registered with the Louisiana Secretary of State Corporate Database by Bryan K. Broussard on this same day.
On October 5, 2010, Choice filed a “Verified Petition for Damages and Injunctive Relief’ against defendants Galeas, Brous-sard, and Martin, and later added Stevens as an additional defendant in a supplemental and amending petition. A “Motion for Preliminary Injunction” was filed the next day. On October 12, 2010, the trial court issued a temporary restraining order against all four defendants, restraining them from “initiating contact or soliciting customers of Choice Copy or soliciting employees of Choice Copy.” In support of their request for a preliminary injunction, Choice attached to their memorandum in support an affidavit of Greg Cummings regarding the Agreements signed by the defendants and their leaving in unison on September 30, 2010. Choice also presented an affidavit of a private investigator stating that some of the defendants have been seen stopping by the offices of former Choice law firm clients and engaging in business with them. Mr. Cummings provided an additional affidavit stating that the defendants have been soliciting Choice customers to bring their work and projects to Alliance. Choice also provided an affidavit from a current Choice employee stating that the defendants and other employees were not coerced into signing the Agreement and that their profit payments were not withheld in exchange for signing the Agreement.
*1219 In opposition, all defendants also submitted affidavits, but stated that they have not solicited Choice customers and work at Alliance in solely administrative capacities. They further stated that they signed the Agreements under duress with the threat of not being paid their due profit checks five days before Christmas | ^(Stevens, Ga-leas, and Martin), or as a result of promises of further job promotion and training (Jason Broussard).
On October 22, 2010, a hearing was held as to Choice’s request for preliminary injunction. After lengthy argument and consideration of the issues concerning the Agreement, the trial court denied Choice’s request for preliminary injunction and immediately dissolved the temporary restraining order against defendants. A signed judgment was entered on October 29, 2010, and Choice timely appealed.

Assignments of Error

Appellant, Choice Copy, does not raise an assignment of error specifically as to the denial of their request for preliminary injunction, but solely argues that the trial court erred in finding that the non-compete and non-solicitation agreements at issue are invalid.

Standard of Review

In reviewing whether the trial court erred in granting or denying a preliminary injunction, the appellate court must be mindful that a trial court has great discretion to grant or deny the relief requested. FQCPRQ v. Brandon Investments, L.L.C., 2005-0793, p. 7 (La.App. 4 Cir. 3/29/06), 930 So.2d 107, 112. An appellate court reviewing the disposition of a motion for preliminary injunction looks for an abuse of that discretion. Id.

Law and Analysis

“An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.” La.Code Civ. Proc. art. 3601(A). “During the pendency of an action for an injunction the court may issue a temporary restraining order, a | ^preliminary injunction, or both ...” La. Code Civ. Proc. art. 3601(C). “When a temporary restraining order is granted, the application for a preliminary injunction shall be assigned for hearing at the earliest possible time ...” La.Code Civ. Proc. art. 3606. “The court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings and support affidavits, or may take proof as in ordinary cases.” La.Code Civ. Proc. art. 3609. “An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction.” La.Code Civ. Proc. art. 3612.
In order to prevail at a hearing for a preliminary injunction, the moving party must prove the existence of three elements: 1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable; 2) that he is entitled to the relief sought; and 3) that he will be likely to prevail on the merits of the case. Derbes v. City of New Orleans, 2005-1249, p. 15 (La.App. 4 Cir. 8/30/06), 941 So.2d 45, 53. However, plaintiffs filing suit under La.Rev.Stat. 23:921, Louisiana’s non-competition and restraint of business prohibition statute, need not prove irreparable injury to obtain injunctive relief. La.Rev. Stat. 23:921(H); Clear Channel Broadcasting, Inc. v. Brown, 2004-0133, p. 9 (La.App. 4 Cir. 3/30/05), 901 So.2d 553, 558.
With respect to the applicability of La.Rev.Stat. 23:921, the version of the statute that was in effect at the time that the employment agreement in question was executed shall be applied to determine whether the non-competition provisions contained therein are enforceable. Clear *1220 Channel, 2004-0138 at p. 6, 901 So.2d at 557. Non-solicitation agreements are separate from non-competition agreements, but the requirements of La.Rev.Stat. 23:921 are applicable to both. Vartech Systems, Inc. v. Hayden, 2005-2499, p. 14 (La.App. 1 Cir. 12/20/06), 951 So.2d 247, 260. Because we find no abuse of discretion of the trial court’s decision in denying preliminary injunctive relief, we affirm the trial court’s judgment denying Choice Copy’s request for preliminary injunction and dissolving the temporary restraining order.
Louisiana has had a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695, p. 4 (La.6/29/01), 808 So.2d 294, 298. Thus, Louisiana’s longstanding public policy has been to prohibit or severely restrict such agreements. Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716, 96-1727, p. 11 (La.7/1/97), 696 So.2d 1373, 1379. This public policy is expressed in La.Rev.Stat. 23:921(A)(1), which provides:
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
First, both parties agree that the anti-compete and anti-solicitation agreements at issue in this matter were executed on or around December 2002, and the parties agree that the Louisiana Supreme Court case interpreting the version of La. Rev.Stat. 23:921 in effect at that time was SWAT 24, supra. La.Rev.Stat. 23:921 contains exceptions to the general public policy disfavoring non-compete agreements. The exceptions to the general policy of 23:921(A)(1) are found in 23:921(C), which, at the time of SWAT 24, supra, and the Choice Agreements at issue here, provided in pertinent part:
C. A person who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a ^specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years.
Upon reviewing the affidavits and other evidence submitted by the parties, and upon our review of the transcript of the hearing on the request for preliminary injunction, we find no abuse of discretion in the trial court’s denial of preliminary injunction. First, the transcript of the hearing indicates that the trial judge read all of the arguments, and was not persuaded either way by the multiple affidavits submitted by the parties attesting to the circumstances surrounding the signing of these agreements. The trial court correctly pointed out that the only testimony in the matter of persons present at the hearing was the deposition testimony of Jay Geiger, the now-former Controller of Choice, whose deposition testimony of October 13, 2010, clearly stated that he was told by Mr. Cummings to withhold the profit payments of December 20, 2002 until the three salesmen signed the Agreements. The trial court had no choice but to rely on Mr. Geiger’s sworn testimony to conclude that at least some of the salesmen “were scheduled to receive a sales bonus and that would be a carrot kind of hung over their head, that’s what Mr. Geiger says.”
The trial court further concluded, and we agree, that even if the Agreements were not vitiated by duress, the evidence does not support plaintiffs contention that *1221 the agreements are solely non-solicitation agreements and not non-competition agreements. Not only is the Agreement entitled “Agreement Not to Unfairly Compete or Solicit Employees from Choice Professional Overnight Copy Service, Inc,” but the language of the agreement itself refers to a signee’s “non-compete |9obligations,” and the geographical limitations attached to the Agreement are referred to as “Parishes and Municipalities in Which Competition Prohibited.”
Next, we agree with the trial court’s decision to “apply very strict adherence” to the Choice Agreements. Louisiana’s strong public policy restricting non-competition agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and, consequently, becoming a public burden. Clear Channel, 2004-0133 at p. 4, 901 So.2d at 556. Because non-competition and similar covenants are in derogation of the common right, they must be strictly construed against the party seeking enforcement. Id.; SWAT 24, 2000-1695 at p. 5, 808 So.2d at 298. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. Civ.Code art. 2056.
Finally, we find no error in the trial court’s ultimate reason for denying Choice Copy’s request for preliminary injunction: the lack of a geographic limitation as to non-solicitation likely makes the Choice Agreements signed by all defendants null and void. See H.B. Rentals v. Bledsoe, 2009-478, p. 4 (La.App. 3 Cir. 11/4/09), 24 So.3d 260, 262 (“While the agreement contains a very broad geographic designation, the non-solicitation clause contains none. Under the plain terms of § 921, it is null and void.”)

Conclusion

For the above reasons, we find no abuse of discretion in the trial court’s denial of Choice’s request for a preliminary injunction. Choice presented no evidence that it is entitled to relief, or that it would likely succeed at trial. Clear Channel, 2004-0133 at p. 9, 901 So.2d at 558. Plaintiff raised no arguments at the trial level or before this Court even addressing or discussing the specific elements 110of granting a preliminary injunction, which is the sole issue before this Court. By failing to provide a geographic limitation as to non-solicitation, the plaintiffs have not shown that they would likely prevail on the merits of their non-solicitation/non-competition Agreements.

Decree

Because the trial court did not commit an abuse of discretion in denying a preliminary injunction and dissolving the initial temporary restraining order, the judgment of the trial court is affirmed.
AFFIRMED
MURRAY, J., concurring with reasons.