| | | |
|---|---|---|
| MARK J. SMITH | * | NO. 2019-CA-0502 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| COMMERCIAL FLOORING | * | |
| GULF COAST, L.L.C. D/B/A | | FOURTH CIRCUIT |
| PRIORITY FLOORS | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 18-0068, DIVISION "E"
Honorable Jacques A. Sanborn, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Tiffany G. Chase)

**BELSOME, J., CONCURS IN THE RESULT**
**CHASE, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS**

Kenneth C. Bordes
ATTORNEY AT LAW, LLC
2725 Lapeyrouse Street
New Orleans, LA 70119

Alexandre E. Bonin
BONIN LAW FIRM
4224 Canal Street
New Orleans, LA 70119
    COUNSEL FOR PLAINTIFF/APPELLANT

Edward F. Harold
FISHER & PHILLIPS L.L.P.
201 St. Charles Avenue
Suite 3710
New Orleans, LA 70170

Eric Bopp
Walter R. Woodruff, Jr.
BOPP LAW FIRM
101 Brookside Drive, Suite 101
Mandeville, LA 70471

Jason R. Anders
ANDERS LAW FIRM
650 Poydras Street, Suite 1400
New Orleans, LA 70130
        COUNSEL FOR DEFENDANT/APPELLEE

**JUDGMENT AMENDED AND
AFFIRMED AS AMENDED**
**October 9, 2019**

This matter arises out of a dispute involving a non-compete agreement executed between Appellant, Mark J. Smith, and Appellee, Commercial Flooring Gulf Coast, L.L.C. d/b/a Priority Floors ("Priority"), Mr. Smith's former employer. Mr. Smith resigned from Priority to work for another flooring company, RCC Flooring, LLC ("RCC"). Thereafter, Mr. Smith filed a petition for declaratory judgment to invalidate the non-compete agreement. Priority filed a reconventional demand seeking, in part, damages and injunctive relief to enjoin Mr. Smith from working with RCC. On March 27, 2018, the district court ruled in favor of Priority on the petition for declaratory judgment, finding that the non-compete agreement was valid. On March 19, 2019, the district court granted Priority's request for a preliminary injunction for a period not to exceed two years from the date of judgment. Mr. Smith appeals the March 19, 2019 judgment granting the preliminary injunction. For the reasons that follow, we find no manifest error in the district court's issuance of the preliminary injunction; however, the district

1

court erred, as a matter of law, in the duration of the injunctive relief granted. Accordingly, we amend and affirm as amended the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Priority is a commercial contractor flooring company headquartered in Jefferson Parish. Mr. Smith worked for Priority for approximately six and a half years. He was initially employed as an entry-level salesman and later promoted to manager of the multi-family division. Mr. Smith was again promoted in August 2015 to general sales manager, a position which required him to oversee the operations of both the multi-family and commercial business divisions. On October 6, 2015, Mr. Smith signed a non-disclosure and non-compete employee agreement (the "non-compete agreement") with Priority. The non-compete agreement prohibited Mr. Smith from working with Priority's competitors, owning a competing business, and soliciting customers of Priority in certain parishes listed in the agreement, including Jefferson Parish, for a period of two years from his termination date.

In October 2017, Mr. Smith informed Priority that he intended to resign to accept an executive position with RCC, a commercial flooring company that also does business in Jefferson Parish. Following, Priority offered Mr. Smith an executive position and requested he sign another non-compete agreement. Mr. Smith declined. Mr. Smith remained with Priority until December 15, 2017.[1]

---

[1] Priority alleged in its reconventional demand discussed *infra*, that Mr. Smith worked for Priority until December 15, 2017.

On December 18, 2017, Priority sent Mr. Smith written notice that it intended to enforce the non-compete agreement. In response, on January 9, 2018, Mr. Smith filed a petition for declaratory judgment seeking a declaration to have the non-compete agreement invalidated. Mr. Smith alleged that the clauses of the non-compete agreement should be strictly construed against its enforceability, and the use of the conjunction "and" in identifying the behavior restrained meant that the agreement was only valid if he engaged in all three of the prohibited restraints: working at another flooring company, owning another flooring company, and soliciting Priority's customers. Mr. Smith further alleged the clear wording of the non-compete agreement required him to have an ownership interest in a competing business for a breach to occur. Considering that he had no ownership interest in RCC, Mr. Smith asserted the non-compete agreement was not enforceable.

On February 8, 2018, Priority filed an answer denying the allegations of the petition for declaratory judgment and a reconventional demand seeking preliminary and permanent injunctive relief to enforce the non-compete agreement. Priority alleged Mr. Smith breached the non-compete agreement by accepting work at RCC and should be enjoined from working with RCC or any other competing commercial flooring businesses in the protected parishes.

The parties consented to having Mr. Smith's petition for declaratory judgment and Priority's request for preliminary injunctive relief consolidated for consideration at a single evidentiary hearing, which took place on March 7, 2018.

Both Kimberly Rooney, Priorty's CEO and co-owner, and Mr. Smith testified at the hearing.

Ms. Rooney testified that the purpose of the non-compete agreement was "to prohibit any activity that involved the sale and/or installation of floor preparation and/or materials, but the agreement did not prohibit employees from working at a business, such as Home Depot.[2] Ms. Rooney said since 2015, all nineteen of Priority's employees signed non-compete agreements. She said RCC was a direct competitor of Priority, as RCC and Priority bid on a number of the same contracts and competed for labor.[3] She believed Mr. Smith had already approached one of Priority's primary sub-contractors to work for RCC. She said without the non-compete agreement, Mr. Smith could leverage the information and the relationships he developed at Priority to benefit RCC, emphasizing that Mr. Smith previously had access to a written list of all of Priority's sub-contractors.

Mr. Smith testified that he understood the non-compete agreement to mean that he could not "take ownership or part ownership, solicit customers and take priority information to a new company." Mr. Smith denied taking proprietary information to RCC or soliciting Priority's clients. He testified that he did not need anything he learned at Priority to do his job at RCC and that the only entities

---

[2] She explained Priority did not consider Home Depot as a competitor because Home Depot is in retail flooring, whereas, Priority is a commercial flooring contractor with approximately 50% of its business multi-family and 50% commercial. Ms. Rooney defined "multi-family as apartment replacement, which occurred when an apartment management company representative contacted Priority for new flooring.

[3] Businesses that Ms. Rooney specifically identified as non-competitors included "Floor & Décor," "Lowe's Home Improvements," "Home Depot," "Costco," "Floor De Lis," and "Sherwin Williams."

4

he called at RCC were already a part of RCC's contact lists. Mr. Smith testified he had immediate oversight of Priority's multi-family and commercial division, with duties that included training, cultivating employees, bid review, and resolution of contract issues on job sites. His work at Priority was sixty percent multi-family and forty percent commercial. In contrast, he described his job at RCC as more of "an administrative role, oversight of the accounting aspect."

On cross-examination, Mr. Smith identified his signature on the Priority non-compete agreement. He acknowledged the position he applied for at RCC was vice-president of operations. Mr. Smith verified that he initially signed a non-compete agreement with RCC; however, RCC and he agreed to disregard the non-compete agreement. Mr. Smith admitted that RCC and he discussed changing his job responsibilities in order to avoid a conflict with Priority's non-compete agreement and that RCC agreed to help him with attorney's fees in the event he was sued over the agreement. Mr. Smith reiterated that he understood he would not be in violation of Priority's non-compete agreement as long as he did not own a part of a competitor's business. Mr. Smith confirmed that a person's reputation in the commercial flooring business and the quality of the work performed play a role in the development of relationships. He testified his position at Priority required him to develop relationships with contractors and customers; and if something went wrong, to act as the "escalation point" in solving the problem. Mr. Smith verified that the names of some of the general contractors who worked for Priority are also the names of contractors who work for RCC. Mr. Smith admitted that he

discussed the scope of his commercial flooring experience acquired at Priority with RCC before he accepted RCC's position.

At the conclusion of the hearing, the parties submitted post-trial memoranda; thereafter, the district court rendered separate judgments. As to the petition for declaratory judgment, on March 27, 2018, the district court found a valid non-compete agreement existed between the parties, writing that the use of the verbiage "and'" as opposed to 'and/or' did not vitiate or reduce the effectiveness of this contract'" with reference to the listing of the restrained behaviors. Mr. Smith appealed. This Court dismissed the appeal, holding that the appeal of the declaratory judgment was not a final, appealable judgment, and accordingly, remanded the matter back to the district court.[4]

On March 13, 2019, the district court granted Priority's request for preliminary injunctive relief. The district court found Mr. Smith had violated the terms of the non-compete agreement; a valid non-compete agreement existed between the parties; and the non-compete agreement provided for a reasonable, two-year non-compete period. The district court preliminarily enjoined Mr. Smith from working with RCC or any other Priority business competitor until such time as Priority's request for permanent injunction could be adjudicated, "but in no event for longer than two years from the date of this Judgment."[5]

---

[4] *See Smith v. Commercial Flooring Gulfcoast, LLC*, 2018-0537 (La. App. 4 Cir. 12/19/18), 262 So.3d 325.

[5] The district court's judgment included the following:

> It is ORDERED, ADJUDGED AND DECREED that there be Judgment herein in favor of Defendant Commercial Flooring Gulf Coast, L.L.C. *d/b/a*

Mr. Smith devolutively appeals the March 13, 2019 judgment.[6]

## DISCUSSION

Mr. Smith contends the district court erred in granting Priority's motion for preliminary injunction in three respects: (1) the district court effectively added the disjunctive "or" to the non-compete clauses, thereby significantly broadening the language of a strictly construed restrictive covenant; (2) the district court erred in finding a valid non-compete/non-solicitation agreement between the parties despite the overly broad language contained in the contract; and (3) the district court erred

---

Priority Floors granting its request for preliminary injunctive relief against Plaintiff Mark J. Smith. The Court finds as follows:

(a) Plaintiff Mark J. Smith violated the terms of the Non-compete/Non-solicitation contract between the parties by working for RCC Flooring, LLC. La. R.S. 23:921(H) ("In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement….");

(b) There was a valid Non-compete/Non-solicitation contract between the parties; and

(c) The Agreement between the parties provided for a reasonable two year Non-competition/Non-solicitation period.

Accordingly, the Court grants preliminary injunctive relief in favor of Defendant Commercial Flooring Gulf Coast, L.L.C. *d/b/a* Priority Floors. Plaintiff Mark J. Smith is preliminarily enjoined from working for RCC Flooring, LLC, or any other business that competes with Priority Floors, in any of the Protected Parishes identified in the Agreement until such time as Priority Floors' request for Permanent Injunction can be adjudicated, but in no event for longer than two years from the date of this Judgment. Defendant Commercial Flooring Gulf Coat, L.L.C. *d/b/a* shall provide a security bond in the amount of $2,500.00.

[6] Mr. Smith initially filed a motion for suspensive appeal of the March 13, 2019 judgment; the district court granted the suspensive appeal. In response, Priority filed a motion to correct the appeal to re-designate the suspensive appeal as a devolutive appeal, citing La. C.C.P. art. 3612. That article, states, in part, that an appeal of a judgment relating to a preliminary injunction "shall not be suspended during the pendency of an appeal unless the court in its discretion so orders." The district court granted Priority's motion to correct appeal. Mr. Smith sought supervisory writ review before this Court and the Supreme Court. Mr. Smith's writ applications were denied. *See Smith v. Commercial Flooring Gulfcoast, LLC*, 2019-0422 (La. App. 4 Cir. 8/2/19) and *Smith v. Commercial Flooring Gulfcoast, LLC*, 2019-01263 (La. 8/13/19).

7

by granting judgment unlawfully restraining Mr. Smith from his trade beyond a period of two years from termination of employment, contrary to Louisiana law.

We will first review assigned errors one and two as both errors question the validity of the non-compete agreement.

**Validity of the Non-Compete Agreement**

Historically, Louisiana jurisprudence has had a strong public policy against non-compete agreements between employers and employees, strictly construing such agreements against the party seeking enforcement. *See Clear Channel Broadcasting, Inc., v. Brown*, 2004-0133, p. 4 (La. App. 4 Cir. 3/30/05), 901 So. 2d 553, 555-56 (citations omitted). This public policy is premised upon the state's interest in preventing an individual from contractually depriving himself of the ability to support himself and becoming a public burden. *Id.*

Louisiana law on non-compete agreements is codified under La. R.S. 23:921. La. R.S. 23:921(A)(1) nullifies non-compete agreements, except as expressly provided for in the sub-parts of the statute; in the event the exceptions are met, the non-compete agreement shall be enforceable.[7] The exceptions, which allow employers and employees to confect non-compete agreements, are outlined in La. R.S. 23:921(C). La. R.S. 23:921(C) permits an employee to agree with his employer to refrain from engaging in a business similar to the employer's business and/or soliciting the employer's customers for a period not to exceed two years

---

[7] By 2010, La. Acts, No. 164, §1, La. R.S. 23:921(A)(1) was amended to add a second sentence. The statute presently states the following:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

from the employee's termination date.[8] For purposes of La. R.S. 23:921(C), La. R.S. 23:921(D)[9] explains that a "person who becomes employed by a competing business, regardless of whether or not that person is an owner . . ., may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing." In the event of a breach, La. R.S. 23:921(H) allows for specific performance, damages, and injunctive relief to enforce the terms of the non-compete agreement.[10]

In the case *sub judice*, the non-compete agreement provided, in pertinent part, the following:

9. **Post-Employment Restrictions.**

(a) **Non-compete Agreement.** During the time that I am employed by Company and for a period of two years after my employment with Company terminates, I will not without the prior written consent of Company:

(i)     work in the Protected Parishes for a business which competes with the Company,

---

[8] La. R.S. 23:921(C) states, in relevant part, the following:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

[9] Without modifying the provisions of La. R.S. 23:921(C), by 2003 La. Acts, No. 428, § 1, the legislature added Subsection D to La. R.S. 23:921.

[10] La. R.S. 23:921(H) provides, in part:

> Any agreement covered by. . . this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to preform, and without the necessity of proving irreparable harm, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.

(ii)   own a business in the Protected Parishes which competes with the Company, and

(iii)   solicit customers of the Company in the Protected Parishes.

For purposes of this Agreement, the business of the Company is the sale and/or installation of floor preparation and/or materials. Employee acknowledges that he is, by virtue of his work with the Company, familiar with all aspects of the Company's business and that further description of the Company business is not necessary to his understanding of the scope of his agreements contained herein.

As used in this Section 9, the "Protected Parishes" are Orleans, St. Tammany, Jefferson, St. Charles, St. John the Baptist, Lafourche, Terrebonne, St. Bernard, East Baton Rouge, West Baton Rouge, Tangipahoa, Ascension, St. James, Lafayette, Evangeline, Iberville, Acadia, and Plaquemines.

10.   **Injunctive Relief.**  I recognize that if I breach this Agreement, Company's business will suffer irreparable harm and that remedies at law will be inadequate.  I agree that in case of any breach or threatened breach of this Agreement, Company is entitled to immediate injunctive relief or a decree of specific performance of this Agreement, in addition to any other remedies provided by law and without being required to prove irreparable harm or special damages.

****

15. **Severability.**  I agree that the provisions of this Agreement are fair and reasonable in light of my employment relationship with Company and the nature of Company's business.  Nevertheless, if a court of competent jurisdiction should invalidate any provision of this Agreement, all other provisions shall survive and remain valid and enforceable.  If a court of competent jurisdiction should decline to enforce any provision on the ground it is over broad or unreasonable, the parties authorize the Court to revise the provision so that it may be enforceable under Louisiana law.

In examining the validity of a non-compete agreement, well-settled jurisprudence provides that a non-compete agreement is a contract between the parties who enter it, and is to be construed according to the general rules of contract interpretation. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 20 (La. 6/29/01), 808 So.2d 294, 307, *superseded by statute on other grounds*. This Court explained the guidelines under which we interpret contracts in *Board of*

10

*Supervisors of Louisiana State University v. 2226 Canal Street, L.L.C.*, 2018-0254, pp. 4-5 (La. App. 4 Cir. 12/19/18), 262 So.3d 909, 914-15 (citations omitted) as follows.

> In interpreting contracts, we are guided by the general rules contained in La. C.C. arts. 2045-2057. La. C.C. art. 2045 states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties' intent, the court must first look to the words and provisions of the contract. *Amend v. McCabe*, 95-0316, p. 7 (La. 12/1/95), 664 So.2d 1183, 1187. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b). Moreover, to determine the meaning of words used in a contract, a court should give them their general prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049. The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. *Ortego v. State, Dept. of Transp. and Development*, [19]96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. *Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C.*, 2002-0536, p. 3 (La. App. 4 Cir. 7/17/02), 822 So.2d 879, 881. Therefore, each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053.

*Conjunctive/Disjunctive Use*

Mr. Smith's first assigned error contends the non-compete agreement's clauses which use the conjunctive "and" in listing the prohibited behaviors, instead

of the use of the disjunctive "or" meant the clear wording of the agreement required him to engage in all three prohibited behaviors for a breach to occur, specifically ownership of a competing business. He, therefore, argues that Priority's use of the conjunctive "and" compels strict enforcement against the validity of the non-compete agreement. In support of this argument, Mr. Smith relies on La. C.C.P. art. 5056 and La. R.S. 1:9.

La. C.C.P. art. 5056 states that "*[u]nless the context clearly indicates otherwise*: (1) [t]he word "and" indicates the conjunctive; (2) [t]he word "or" indicates the disjunctive; and (3) [w]hen the article is phrased in the disjunctive, followed by the words "or both", both the conjunctive and disjunctive are intended." [Emphasis added]. Similarly, La. R.S.1:9 provides "*[u]nless it is otherwise clearly indicated by the context*, whenever the term "or" is used in the Revised Statutes, it is used in the disjunctive and does not mean "and/or.""" [Emphasis added]. We disagree with Mr. Smith's argument that the application of these statutes require invalidation of the non-compete agreement.

We first note that the proper meaning of the conjunctive "and" and the disjunctive "or," as utilized in La. C.C.P. art. 5056 and La. R.S. 1:9 refer to their usage under the general rules of statutory construction, rather than in a civil context. *See Smith v. Our Lady of the Lake Hospital*, 624 So.2d 1239, 1249 (La. App. 1st Cir. 1993). In a civil context, such as the present matter, established jurisprudence recognizes that "and" may mean "or" and vice versa. *Id. See also Bradford v. Louisiana Public Service Com'n*, 189 La. 327, 338, 179 So. 442 (1938), (where the Court opined that "and" may be construed to mean "or" to effectuate the intention of the parties to an instrument). Hence, the use of "and" in listing the non-competitive behaviors proscribed in this civil, non-compete

12

agreement, rather than the disjunctive "or" does not automatically mandate invalidation of the non-compete agreement. Instead, we must review the context and apply the established principles of contract interpretation enunciated herein to evaluate the non-compete agreement's validity.

The non-compete agreement herein entails an independent examination of the contract and presents questions of law, rather than a review of the district court's factual findings; thus, the appropriate standard of appellate review is *de novo*—whether the district court was legally correct or incorrect. *See New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 2009-1433, p. 9 (La. App. 4 Cir. 5/29/10), 40 So.3d 394, 401. Based on the four corners of the non-compete agreement, we find the words of the non-compete agreement are clear and unambiguous. The agreement signed by Mr. Smith expressly restrains Mr. Smith from working for a competitor, owning a competitive business, and soliciting Priority's customers in the protected parishes. Notwithstanding, at trial, Mr. Smith admitted he signed the non-compete agreement, but he understood the non-compete agreement to mean he could not take ownership of a competing business. Evidenced by the fact that the non-compete clauses parrot the restrained behavior permitted by La. 23:921(C) and 23:921(D), we find the clear purpose of the non-compete agreement was to restrain Mr. Smith from engaging in any of the behaviors listed, whether by working with a competitor or as a competitive owner. The interpretation of the contract urged by Mr. Smith—that Priority only wanted to restrain him from competition in his capacity as an owner—is antithetical to the purpose of the non-compete agreement. Hence, based on our *de novo* review, Priority's use of the conjunctive "and" in listing the proscribed behavior in the

non-compete clauses does not invalidate the non-compete agreement. This error is without merit.

*Overly broad Business Definition*

Next, Mr. Smith argues that the definition of Priority's business as contained in the non-compete agreement—the sale and/or installation of floor preparation and/or materials—is overly broad; and consequently, violates La. R.S. 23:921(C). He asserts that in the context of that definition, Priority's non-compete agreement could restrict former employees from competing in the flooring business in jobs that ranged from construction worker to a cashier. Mr. Smith relies in part on *Paradigm Health System, L.L.C. v. Faust*, 2016-1276 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068. In that case, the First Circuit found that a non-compete agreement which prohibited a doctor from engaging "in the practice of medicine" or rendering "any medical services" to any business similar to services provided by the former employer was overly broad and unenforceable. The agreement restricted the doctor from engaging in many more types of employment than he actually performed for the employer. The First Circuit noted that the "employer is only entitled to keep employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry." *Id.*, 2016-1276, p. 7, 218 So.3d at 1073 (citation omitted). We find the present non-compete agreement distinguishable from the *Paradigm* non-compete agreement.

The *Paradigm* Court voided the non-compete agreement based on its finding that enforcement of the contract would have restricted the employee from engaging in many more types of employment that the employee actually held with the

14

employer. Unlike *Paradigm*, the non-compete agreement herein did not restrict Mr. Smith from engaging in employment beyond the scope of Priority's business; rather, the non-compete agreement, in its totality, prohibited Mr. Smith from "work in the protected parishes for a business which competes with the Company." We find the present case aligns more closely with *Baton Rouge Computer Sales, Inc. v. Miller-Conrad*, 1999-1200, p.3 (La. App. 1 Cir. 5/23/00), 767 So.2d 763, 764, a case where the employee challenged the enforceability of a non-compete agreement because the business was not defined with sufficient specificity. The Court found that the law does not require a specific definition of the employer's business in a non-competition agreement. *Id.*. In upholding the validity of the non-compete agreement, the Court noted there was no evidence the employer engaged in any business other than computer sales as implied by its name; and further opined that the employee knew exactly what type of business she agreed not to compete in when she signed the non-compete agreement. *Baton Rouge Computer Sales*, 1999-1200, p. 4, 767 So.2d at 765.

Similarly, in this matter, Mr. Smith explicitly acknowledged within the non-compete agreement that he was "familiar with all aspects of the Company's business and that further description of the business was "not necessary to the scope of his understanding of the agreement." Moreover, the express testimony of both Ms. Rooney and Mr. Smith conclusively established that RCC, a company where Mr. Smith is now an executive vice-president, competes directly with Priority for some of the same commercial contracts and sub-contract labor. Mr. Smith has offered no countervailing evidence to support that Priority attempted to enforce the non-compete agreement in a manner that goes beyond its business as a commercial flooring contractor. Indeed, at trial, Ms. Rooney specifically testified

15

in response to questions posed by Mr. Smith's counsel that Priority did not apply the non-compete agreement to other non-commercial flooring businesses, such as retailers like "Home Depot."

Therefore, Priority's business, as defined in the non-compete agreement and understood by Mr. Smith, properly limited Mr. Smith from competing with Priority's actual business competitors, which Priority is statutorily permitted to do. Hence, this error lacks merit.[11]

We now review the propriety of the duration of the preliminary injunctive relief granted.

**Duration of the Preliminary Injunction**

Mr. Smith's last assignment of error argues the judgment, which preliminarily enjoins Mr. Smith from working for RCC or any other competing business, is facially unlawful because it is beyond a period of two years from termination of employment, the statutory duration permitted by La. R.S. 23:921(C) for non-compete agreements. This assignment of error has merit.

A district court has broad discretion in the granting or denial of a preliminary injunction, which findings will not be disturbed on appellate review in the absence of a clear abuse of that discretion. *See Forrester v. Bruno,* 2018-0648, p. 17 (La. App. 4 Cir. 5/1/19), --- So.3d ---, 2019 WL 1940341, *8. However, that standard of review is premised upon a finding that in the exercise of its broad discretion, the district court committed no error of law and was not manifestly erroneous or clearly wrong in making its factual findings. *Id.* In order for a

---

[11] We also note that the non-compete agreement contained a severability clause. The severability clause permits a court to revise any provision of the agreement on the ground that it is overbroad in order to make the agreement enforceable. Hence, in the event the description of Priority's business in the non-compete agreement was "overbroad," Mr. Smith's acquiescence to the severability clause also mitigates against finding merit to this error.

plaintiff to meet his burden of proof for a preliminary injunction, the plaintiff must make a *prima facie* showing that he will prevail at the trial on the permanent injunction. *Id.*, 2018-0648, p. 17, --- So. 3d ---, *9 (citations omitted). A *prima facie* showing to obtain a preliminary injunction is "less than that required for a permanent injunction." *Id.*

La. R.S. 23:1292(H) allows the issuance of a preliminary injunction, without a showing of irreparable harm, as one of the remedies to enforce a non-compete agreement. In the case *sub judice*, we find no abuse of the district court's discretion to grant a preliminary injunction to enforce the non-compete agreement. Priority made a *prima facie* showing at the hearing that Mr. Smith had signed and breached the non-compete agreement. Nonetheless, that portion of the district court's judgment which preliminary enjoined Mr. Smith from competition for a period not to exceed two years from the date of judgment is defective in two respects.

First, by its very nature, a writ of preliminary injunction is a temporary disposition of the action; it is an interlocutory order issued in a summary proceeding pending a trial on the merits on the main demand for permanent injunctive relief. *See FQCPRQ v. Brandon Investments, L.L.C.*, 2005-0793, p. 7 (La. App. 4 Cir. 3/29/06), 930 So.2d 107, 111-112. Therefore, in granting a preliminary injunction enjoining competition for up to two years, the maximum duration statutorily allowed, the judgment, in effect, grants a permanent injunction. As an interlocutory order requires only a *prima facie* showing, the judgment can only preliminarily enjoin Mr. Smith until a hearing on the permanent injunction.

Second, a preliminary injunction that extends for up to two years from the date of judgment impermissibly extends the time period to restrict competition

allowed by law that Mr. Smith and Priority contracted for in the non-compete agreement. The non-compete agreement unambiguously stated that Mr. Smith would be prohibited from competition for "two years from the date of termination," the time period that complies with the statutory period permitted by La. R.S. 23:1292(C). As such, based on the four corners of the contract, the maximum duration Mr. Smith can be preliminarily or permanently enjoined from competing with Priority is two years from the date of his termination—December 15, 2017.

Therefore, although we find no manifest error in the district court's grant of the preliminary injunction, we do find the district court erred as a matter of law in extending the preliminary injunction for a period not to exceed two years from the date of judgment. Accordingly, we amend the district court's judgment to limit the duration of the preliminary injunction to two years from December 15, 2017, Mr. Smith's last employment date with Priority.

## CONCLUSION

Based on the foregoing reasons, the non-compete agreement is enforceable as it meets the exceptions as provided for in La. R.S. 23:921(C) and (D). Accordingly, we amend and affirm as amended the district court's judgment.

**JUDGMENT AMENDED AND
AFFIRMED AS AMENDED**

18